Alan R. Lyons
William Fried
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Tel: (212) 592-1400
Fax: (212) 592-1500
alyons@herrick.com
wfried@herrick.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PROJECT VERITAS; PROJECT VERITAS ACTION FUND; JAMES O'KEEFE; ALLISON MAASS; DANIEL SANDINI; CHRISTIAN HARTSOCK, | : Case No. |
| Plaintiffs, | : **COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF AND JURY DEMAND** |
| vs. | : |
| GEMINI INSURANCE COMPANY. | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs Project Veritas, Project Veritas Action Fund ("PVAF"), James O'Keefe, Allison Maass, Daniel Sandini, and Christian Hartsock (collectively "Plaintiffs"), by and through their attorneys, Herrick, Feinstein LLP, bring this Complaint for breach of contract and declaratory relief against Gemini Insurance Company ("Gemini"), and state the following:

1.  This is an insurance coverage action seeking damages for breach of contract and declaratory relief. Plaintiffs seek an adjudication that Gemini has a duty to defend and indemnify Plaintiffs under a Professional Liability Insurance Policy issued by Gemini to Project Veritas in connection with three underlying lawsuits. Plaintiffs also seek damages to recover the

amounts incurred by Plaintiffs in funding their own defense for those underlying lawsuits as a result of Gemini's improper denial of coverage and breach of contract.

## PARTIES

2.  Project Veritas is a non-profit corporation incorporated under the laws of the State of Virginia and maintains its principal place of business in Mamaroneck, New York. Project Veritas is an organization recognized as exempt from federal taxation as a charitable and educational organization under section 501(c)(3) of the Internal Revenue Code of 1986 as amended.

3.  PVAF is a non-profit corporation incorporated under the laws of the State of Virginia and maintains its principal place of business in Mamaroneck, New York. PVAF is an organization recognized as exempt from federal taxation as a social welfare organization under section 501(c)(4) of the Internal Revenue Code of 1986 as amended.

4.  Project Veritas and PVAF conduct undercover investigations for the benefit of the public including those who donate money to their General Revenue Fund. Project Veritas' mission, as stated on its website, is to, *inter alia*, "[i]nvestigate and expose corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in both public and private institutions in order to achieve a more ethical and transparent society."

5.  Project Veritas and PVAF, and their investigative journalism, are frequently featured and referenced in various media outlets, including CNN, the New York Times, the Washington Post, Huffington Post, among others.

6.  At all material times, James O'Keefe ("O'Keefe") is and was the Chairman and President of Project Veritas and PVAF, and a resident of Mamaroneck, New York.

7. At all material times, Allison Maass ("Maass") was an employee journalist of Project Veritas and a resident of White Plains, New York and Arlington, Virginia.

8. At all material times, Daniel Sandini ("Sandini") was an independent contractor journalist of Project Veritas and a resident of Portland, Oregon and St. Petersburg, Florida.

9. At all material times, Christian Hartsock ("Hartsock") was an employee journalist of Project Veritas and a resident of Burbank, California.

10. Upon information and belief, Gemini is an insurance company incorporated under the laws of the State of Delaware with its principal place of business located at 475 Steamboat Road, Greenwich, CT 06830.

## JURISDICTION AND VENUE

11. This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

12. An actual and justiciable controversy exists between Plaintiffs and Gemini within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage provided under the insurance policy, as more particularly described below.

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

14. This Court has personal jurisdiction over Gemini by virtue of the fact that Gemini offers and sells insurance to insureds domiciled in this district, and has committed acts and/or material omissions in this district which have caused and continue to cause Plaintiffs grave harm in this district.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Policy was issued to Project Veritas in this district, and this district is where a substantial part of the events giving rise to the claims occurred.

## .**THE INSURANCE POLICY**

16. Gemini issued to Named Insureds Project Veritas and PVAF a Professional Liability Insurance Policy effective September 29, 2016 to September 29, 2017 under policy number VNPL002153 subject to a limit of $1,000,000.00 each claim and in the aggregate, and a per claim deductible of $25,000 ("Policy").  A true and correct copy of the Policy is attached hereto as Exhibit A.

17. Because O'Keefe, Maass, Sandini, and Hartsock are officers, employees or independent contractors of Project Veritas and PVAF, they are "Insureds" as defined under the Policy.

18. The Policy contains the following Insuring Agreement clause at Section I. (terms in bold are defined by the Policy):

> The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** that the **Insured** shall become legally obligated to pay because of **Claims** for **Wrongful Acts**, provided that:
>
> A. the **Claim** is first made against the **Insured** during the **Policy Period**;
>
> B. the **Claim** arises out of **Wrongful Acts** committed by an **Insured** which first commenced on or after the **Retroactive Date**;
>
> C. written notice of the **Claim** is received by the **Company** during the **Policy Period** or within sixty (60) days thereafter; and
>
> D. prior to the inception date of this **Policy** no **Insured** knew, nor could have reasonably foreseen, any **Wrongful Acts** or other circumstances that reasonably might result in a **Claim** covered by this **Policy**.

- 4 -

19. Section III.A. of the Policy, entitled, "Defense and Settlement," provides that "[t]he **Company** has the right and duty to select counsel and to defend any **Claim** covered by this Policy, even if any of the allegations are groundless, false or fraudulent."

20. The Policy defines the following pertinent terms:

> **B. Claim** means a written demand against an **Insured** for **Loss** because of a **Wrongful Act**, including but not limited to:
>
>     **1.** the service of a summons and complaint or an arbitration demand or the commencement of an administrative proceeding; or
>
>     **2.** a request to toll the statute of limitations,
>
> A **Claim** does not include a **Disciplinary Proceeding**.
>
> **C. Claim Expenses** means reasonable and necessary costs, charges, fees (including attorney's fees and expert fees) and expenses, incurred by the **Company** or with the **Company's** prior written consent, resulting from the adjustment, investigation or defense of a **Claim** covered by this Policy. . . .
>
>           \* \* \*
>
> **D. Company** means the insurer identified in the Declarations Page.
>
>           \* \* \*
>
> **G. Insured(s) means**:
>
>     **1.** The **Named Insured** as listed on the Declarations Page;
>
>     **2.** Any **Subsidiary**;
>
>     **3.** Any partner, director or officer of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** while the partner, director or officer is acting in their respective capacity as such;
>
>     **4.** Any employee of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**;

HF 11689740 v.2  #19004/0001 09/29/2017 05:04 PM

5.  Any former partner, director, officer, or employee of the **Named Insured** or **Subsidiary** but only with respect to **Professional Services** performed on behalf of the **Named Insured** or **Subsidiary** prior to the termination of that respective capacity;

    \* \* \*

9.  Independent contractors of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**.

H.  **Loss means**:

    1.  Compensatory damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy; and

    2.  Punitive, exemplary or multiple damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy, but only if such punitive, exemplary or multiple damages are insurable under the law of the jurisdiction that is applicable to the **Claim**;
        However, **Loss** does not include:

        (a) the cost of complying with an award for equitable, injunctive or other non-monetary relief;

        (b) sanctions, fines or penalties;

        (c) any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim**;

        (d) the return or withdrawal of fees or charges for **Professional Services** rendered by an **Insured**; and

        (e) workers' compensation, disability, unemployment, social security, or any other employment benefit.

I.  **Named Insured** means the **Named Insured** listed on the Declarations Page.

J.  **Personal and Advertising Injury** means publication or utterance of oral or written material in connection with the **Insured's** performance or advertising of **Professional Services** that violates a person's right of privacy or publicity or which libels or slanders a person or organization.

HF 11689740 v.2  #19004/0001 09/29/2017 05:04 PM

    **K. Policy Period** means the time period specified on the Declarations Page, during which this Policy is in effect unless cancelled.

    **L. Professional Services** means only those **Professional Services** listed on the Declarations Page rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation.

* * *

    **P. Wrongful Act** means any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury**, committed solely in the rendering of or failure to render **Professional Services** by an **Insured**.

21.    The **Professional Services** listed on the Declarations Page (as amended by Endorsement 7) states: "Solely in the performance of providing investigating reporting services."

<b><u>THE UNDERLYING ACTIONS AND DENIALS OF COVERAGE</u></b>

22.    This lawsuit involves Gemini's wrongful denial of a duty to defend and indemnify Plaintiffs under the Policy in connection with three underlying actions filed by third parties as described herein.

**A.  <u>The Koerber Action</u>**

23.    On or about February 8, 2017, Plaintiff Kimberly Koerber commenced an action against, *inter alia*, Project Veritas, PVAF, O'Keefe, Maass and Hartsock in the Superior Court of the State of California for the County of Los Angeles, styled *Koerber v. Cengage Learning Inc., et al.*, Case No. BC649878 (the "Koerber Action").  A true and correct copy of the Complaint filed in the Koerber Action, dated February 7, 2017, is attached hereto as Exhibit B.

24.    In the Koerber Action, Koerber asserted various causes of action, including, *inter alia*, intentional infliction of emotional distress, statutory invasion of privacy, common law invasion of privacy, public exposure of private facts, violation of privacy -- use of name of likeness, and negligence.  Koerber alleged, *inter alia*, that she was wrongfully terminated from

her employment as a result of Project Veritas' publication, without her consent, of a hidden video recording in which she expressed her opinions on certain political subjects.

25.     On or about February 10, 2017, Project Veritas tendered the Koerber Action to Gemini for a defense and indemnity under the Policy.

26.     By letter, dated March 2, 2017, Gemini, through its third-party claims administrator Vela Insurance Services ("Vela"), acknowledged a duty to defend Project Veritas, PVAF, O'Keefe, Maass and Hartsock, subject to reservation of rights on certain exclusions.  In said March 2, 2017 letter, Gemini acknowledged that the Koerber Action alleged conduct by the Insureds in rendering "Professional Services" as defined by the Policy.  A true and correct copy of said March 2, 2017 letter is attached hereto as Exhibit C.

27.     Gemini proceeded to provide a defense by retaining the law firm of Litchfield Cavo LLP as defense counsel to represent Project Veritas, PVAF, O'Keefe, Maass and Hartsock in connection with the Koerber Action.

**B.  The Democracy Partners Action**

28.     On or about June 1, 2017, Plaintiff Democracy Partners, LLC ("Democracy Partners"), Strategic Consulting Group, NA, Inc. and Robert Creamer commenced an action against Project Veritas, PVAF, O'Keefe, Maass and Sandini in the United States District Court for the District of Columbia styled *Democracy Partners, LLC, et al. v. PVAF, et al.*, Civil Action No. 1:17-cv-1047 (the "Democracy Partners Action").  A true and correct copy of the Complaint from the Democracy Partners Action, dated June 1, 2017, is attached hereto as Exhibit D.

29.     In the Democracy Partners Action, Democracy Partners and Creamer brought claims against Project Veritas for allegedly publishing hidden camera videos which were edited to charge that Democracy Partners and Creamer were involved in a conspiracy to incite violence

at rallies for then Presidential candidate Donald Trump and to enable non-citizens to vote illegally, and that then Secretary of State Hillary Clinton was personally involved in these illegal activities. Based on these allegations, Democracy Partners and Creamer asserted various causes of action, including, *inter alia*, for unlawful interception of oral communications, fraudulent misrepresentation, and civil conspiracy.

30. On or about June 2, 2017, Project Veritas tendered the Democracy Partners Action to Gemini for a defense and indemnity under the Policy.

C. **The Wentz Action**

31. On June 23, 2017, Steve Wentz commenced an action against, *inter alia*, Project Veritas, O'Keefe, and Maass in the United States District Court Middle District of Florida, Orlando Division styled *Wentz v. Project Veritas et al.*, Case No. 6:17-cv-01164-ORL-18GJK (the "Wentz Action"). A true and correct copy of the Complaint from the Wentz Action, dated June 23, 2017, is attached hereto as Exhibit E.

32. In the Wentz Action, Steve Wentz, a teacher and president of United Teachers of Wichita, asserted causes of action for, *inter alia*, unlawful interception of oral communication, violation of the Florida Security of Communications Act, and defamation, which are based on allegations that Project Veritas secretly recorded and subsequently published edited statements by Wentz to make it appear as though he had threatened students with force.

33. On or about June 15, 2017, Project Veritas tendered the Wentz Action to Gemini for a defense and indemnity under the Policy.

**D. <u>Gemini Denies Coverage for All Three Underlying Actions</u>**

34. By letter dated July 18, 2017, Gemini, through Vela, denied a duty to defend and indemnify its Insureds in the Democracy Partners Action. A true and correct copy of said July 18, 2017 letter is attached hereto as Exhibit F.

35. By letter dated July 20, 2017, Gemini, through Vela, denied a duty to defend and indemnify its Insureds in the Wentz Action. A true and correct copy of said July 20, 2017 letter is attached hereto as Exhibit G.

36. By letter dated August 7, 2017, Gemini, through Vela, denied a duty to defend and indemnify its Insureds in the Koerber Action and stated that it would withdraw its defense within 30 days. A true and correct copy of said July 20, 2017 letter is attached hereto as Exhibit H.

37. In connection with the Koerber Action, the Democracy Partners Action and the Wentz Action (collectively, the "Underlying Actions"), Gemini provided the same reasons for its denial of coverage.

38. Gemini claimed that the allegations asserted in the Underlying Actions did not fall within the Policy's definition of "Professional Services," on the basis that they did not involve the rendering of services (a) "for others" or (b) "for a fee or other form of compensation."

39. Project Veritas and PVAF conduct their investigations, including the undercover investigations referenced in each of the Underlying Actions, "for others" including members of the general public and those who donate to the companies' General Revenue Funds. Project Veritas and PVAF also make their investigatory reports and findings available "for others" to broadcast and publish.

40. Project Veritas and PVAF conduct their investigations, including the undercover investigations referenced in the Underlying Actions, for "other form of compensation" within the definition of "Professional Services".

41. Contrary to Gemini's position, each of the three Underlying Actions constitute a "Claim" alleging a "Wrongful Act" committed in the rendering or failure to render "Professional Services" (i.e. investigative reporting services) by an "Insured", as each of those terms are defined by the Policy. Accordingly, the allegations in each of the three Underlying Actions trigger Gemini's duty to defend and indemnify its Insureds.

42. Gemini's position that the Complaints filed in the Underlying Actions do not constitute "Professional Services" renders coverage under the Policy illusory as it would mean that no coverage would be afforded for any Claims arising out of any undercover investigations conducted by Project Veritas and PVAF -- the very "Professional Services" for which Gemini agreed to provide liability insurance.

43. With regard to the Koerber Action, Gemini had initially acknowledged in Vela's March 2, 2017 letter that it had a duty to defend, expressly affirming that the Complaint arose out of the Insureds' "Professional Services." `

44. In the Koerber Action, Gemini assumed the duty to defend without reservation of rights with regard to the definition of "Professional Services" and continued to defend its Insureds in the Koerber Action for over five months without reserving said right.

45. Gemini is estopped from now withdrawing its defense in the Koerber Action.

46. Gemini has waived its right to withdraw its defense in the Koerber Action.

47. Gemini is estopped from denying coverage in the Koerber Action based on the definition of "Professional Services."

48. Gemini has waived its right to deny coverage in the Koerber Action based on the definition of "Professional Services."

49. In its denial of coverage for the Underlying Actions, Gemini also claimed that Project Veritas had misrepresented in its application for insurance that: (1) its business included or prospectively included earning fees or other compensation for investigative reporting services rendered to others; and (2) Project Veritas had obtained consent from persons appearing in its video recordings.

50. Project Veritas did not make any misrepresentations on the application for the Policy (or for prior policies issued by Gemini).

51. Project Veritas had disclosed in its initial application for insurance with Gemini in 2014 that 100% of its revenue is sourced from "online fundraising." Moreover, in its renewal application, signed on August 9, 2016, Project Veritas expressly stated that it has "no obligations to 'clients'" and that it received contributions to its General Revenue Fund. Project Veritas' initial application further referred Gemini to its website (www.projectveritas.com) which stated that "Project Veritas relies on contributions from generous donors interested in investigations of corruption, dishonesty, self-dealing, waste, fraud and other misconduct." True and correct copies of Project Veritas' initial insurance application, dated August 14, 2014, and its renewal application, signed on August 9, 2016, are attached hereto as Exhibits I and J, respectively.

52. Gemini was therefore aware prior to issuing the Policy that Project Veritas and PVAF did not collect "fees" directly from clients for its investigative reporting and that its sole source of revenue was through contributions to the companies' General Revenue Funds.

53. Project Veritas obtains consent from all employees, independent contractors and actors appearing in its video recordings as part of its investigations.

HF 11689740 v.2  #19004/0001 09/29/2017 05:04 PM

54. Project Veritas did not misrepresent on the policy application that it obtains consent from the targets of its undercover investigations to publish the content of the recorded films. Project Veritas disclosed on the application that the nature of its investigations was "undercover" video recordings, using "mini-cams" and "hidden cameras." Thus, Gemini was fully aware of the nature of Project Veritas' investigations and knew (or should have known) that obtaining releases from the subjects targeted would defeat the entire purpose of its investigations.

55. Gemini's position in connection with the Underlying Actions is in stark contrast to its position in a prior similar lawsuit against Project Veritas in which Gemini acknowledged a duty to defend. In the lawsuit styled *Maldonado v. O'Keefe*, et al., filed in the Supreme Court of the State of New York in September of 2015 (the "Maldonado Action"), which similarly arose from Project Veritas' undercover investigation services, Gemini had acknowledged a duty to defend in that litigation without reserving its rights on the definition of "Professional Services." A true and correct copy of the Complaint from the Maldonado Action, and a letter dated September 29, 2015 from Vela confirming Gemini's duty to defend, are attached hereto as Exhibits K and L, respectively.

56. Gemini continued to accept premiums from Project Veritas after its defense of the Maldonado Action, which also involved the publication of a video without the subject's consent.

57. Prior to the inception of the Policy, Project Veritas and PVAF had disclosed to Gemini, and Gemini knew or should have known, that the services provided by Project Veritas and PVAF comprise of undercover investigations involving publication of hidden camera video recordings made without the consent of the target of the investigation, and that Project Veritas and PVAF did not directly receive "fees" from "clients."

HF 11689740 v.2  #19004/0001 09/29/2017 05:04 PM

58. Following such disclosure by Project Veritas and PVAF, and knowledge by Gemini, Gemini issued the Policy.

59. Gemini knowingly accepted premium payments in connection with the Policy following its discovery of the alleged misrepresentations upon which it now relies to rescind the Policy.

60. Gemini has ratified the Policy and may not rescind the Policy.

61. Gemini is estopped from rescinding the Policy and/or has waived its right to rescind the Policy.

62. If Project Veritas had known that Gemini would deny a duty to defend lawsuits arising out of its undercover investigations for "Claims" made during the "Policy Period" -- having previously defended the Maldonado Action in the previous policy period -- Project Veritas would have purchased professional liability insurance from another insurer and has been prejudiced by Gemini's denial of coverage.

## COUNT I -- BREACH OF CONTRACT

63. Plaintiffs hereby incorporate and reallege the allegations in paragraphs 1 through 62 as if fully set forth herein.

64. Based upon the terms and conditions of the Policy, Gemini has a duty to defend and indemnify Plaintiffs in connection with the Underlying Actions, and to reimburse Plaintiffs for the attorneys' fees that they have been forced to expend to defend against the Underlying Actions.

65. To date, Plaintiffs have incurred more than $160,000 in attorneys' fees and costs in connection with the Underlying Actions. Plaintiffs have demanded that Gemini acknowledge a duty to defend under the Policy, but Gemini has denied such a duty.

66. Gemini, by improperly denying a duty to defend and indemnify Plaintiffs, has breached the Policy.

67. Plaintiffs have at all times complied with all of their obligations under the Policy.

68. As a direct and proximate result of Gemini's breach of contract, Gemini has deprived Plaintiffs of the benefit of the insurance coverage for which premiums have been paid.

69. As a result of Gemini's breach of contract, Plaintiffs have suffered actual and compensatory damages, plus interest and consequential damages in an amount to be determined at trial.

## COUNT II -- DECLARATORY JUDGMENT

70. Plaintiffs hereby incorporate and reallege the allegations in paragraphs 1 through 69 as if fully set forth herein.

71. An actual controversy exists between Plaintiffs and Gemini with respect to the rights and obligations of Gemini under the Policy in connection with the Underlying Actions.

72. A declaratory judgment is both necessary and proper in order to set forth and determine Gemini's obligations to Plaintiffs in connection with the Policy and the Underlying Actions.

73. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 through 2202, Plaintiffs request that the Court declare that Gemini has a duty under the Policy to defend and indemnify Plaintiffs in connection with the Underlying Actions, and to reimburse Plaintiffs for all attorneys' fees and costs Plaintiffs have incurred in connection with the Underlying Actions.

WHEREFORE, Plaintiffs pray as follows:

1. On the claim for breach of contract, for actual money damages, plus interest (including prejudgment interest) to be determined by the Court;

2  On the claims for declaratory judgment, for a declaration that Gemini has a duty to defend and indemnify Plaintiffs under the Policy in connection with the Underlying Actions; and

3. For such other relief as the Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated:  September  29, 2017            HERRICK, FEINSTEIN LLP

By: /s/ Alan R. Lyons

    Alan R. Lyons
    William Fried
    Attorneys for Plaintiffs Project Veritas, PVAF,
    James O'Keefe, Allison Maass; Daniel Sandini,
    and Christian Hartsock
    2 Park Avenue
    New York, New York 10016
    (212) 592 1400  (telephone)
    (212) 592 1500  (facsimile)
    alyons@herrick.com
    wfried@herrick.com