# EXHIBIT A

G7116 X                                                        9-9K478C

# GEMINI INSURANCE COMPANY

A STOCK COMPANY
(herein called "the Company")

COMMON POLICY DECLARATIONS

Policy No.:  __VNPL002153__                    Renewal/Rewrite of:   __VNPL001900__

| Named Insured and Mailing Address |
| --- |

Project Veritas
1214 West Boston Post Road NO 148
Mamaroneck, NY 10543

**Policy Period:**  From 09/29/2016 to 09/29/2017 at 12:01 a.m. Standard Time at the address of the First Named Insured as stated herein

**PROFESSIONAL SERVICES:**  __See Endorsement__

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**Professional Liability Coverage Part**                          $        59,648

**TOTAL PREMIUM**          $        59,648

| Form (s) and Endorsement (s) made a part of this policy at inception. | **See attached schedule:** |
| --- | --- |

This policy is not binding unless sealed and countersigned by Gemini Insurance Company or its Authorized Representative.

Countersigned On:  _____9/29/2016_____          By: _____

At:  _____Greenwich, Connecticut_____                Authorized Representative

THESE COMMON POLICY DECLARATIONS AND, IF APPLICABLE, THE PROFESSIONAL LIABILITY DECLARATIONS, THE COMMERCIAL GENERAL LIABILITY DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART (S), FORM (S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBER POLICY

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.**



**ELANY**
EXCESS LINE ASSOCIATION
OF NEW YORK

This is to certify that Excess Line Association of New York received and reviewed the     04/19/2017
attached insurance document in accordance with Article 21 of the New York State
Insurance Law

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.**

# GEMINI INSURANCE COMPANY

A STOCK COMPANY

(herein called "the Company")

### COMMON POLICY DECLARATIONS

**Policy No.:**   VNPL002153                     **Renewal/Rewrite of:**   VNPL001900

| Named Insured and Mailing Address |
|---|

Project Veritas
1214 West Boston Post Road NO 148
Mamaroneck, NY 10543

**Policy Period:**   From 09/29/2016 to 09/29/2017 at 12:01 a.m. Standard Time at the address of the First Named Insured as stated herein

**PROFESSIONAL SERVICES:**   See Endorsement

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | | |
|---|---|---|
| **Professional Liability Coverage Part** | **$** | **59,648** |
| **TOTAL PREMIUM** | **$** | **59,648** |

Form (s) and Endorsement (s) made a part of this policy at inception.          **See attached schedule:**

This policy is not binding unless sealed and countersigned by Gemini Insurance Company or its Authorized Representative.

Countersigned On: _____ 9/29/2016 _____   By: _____

At: _____ Greenwich, Connecticut _____          Authorized Representative

THESE COMMON POLICY DECLARATIONS AND, IF APPLICABLE, THE PROFESSIONAL LIABILITY DECLARATIONS, THE COMMERCIAL GENERAL LIABILITY DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART (S), FORM (S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBER POLICY

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.**

# PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS

## THIS IS A CLAIMS MADE AND REPORTED POLICY

**Policy:**   VNPL002153                                                                 **Effective Date:**   09/29/2016

**Named Insured:**   Project Veritas

---

## LIMITS OF LIABILITY

| | |
|---|---|
| Aggregate Limit of Liability | $1,000,000 |
| Each Claim Limit of Liability | $1,000,000 |

**Retroactive Date:**       09/29/2014

**Deductible:**       $25,000       Per Claim

**Professional Services:**       See Endorsement

---

**Minimum Term Premium:**                       $59,648

**Minimum Earned Premium at Inception:**        $14,912

**Total Premium:**                              $59,648

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

# SCHEDULE OF FORMS

**Named Insured:**   Project Veritas

**POLICY NO.:**   VNPL002153

I271

| FORM NUMBER | End. # | TITLE |
|---|---|---|
| POLCVLTR_PL 03 14 | | Vela Policy Cover Letter |
| CMNDEC 07 16 | | Common Declarations |
| MPLDEC 07 16 | | Professional Liability Coverage Part Declarations |
| SCHED 07 16 | | Schedule of Forms |
| VP 00 06 12 15 | | Professional Liability Coverage Form |
| VP0285 0707 | 01 | Pending and Prior Litigation Exclusion |
| AD 66 16 04 09 | 02 | Media Liability Extension |
| AD 66 16 04 09 | 03 | Discrimination Carveback Endorsement |
| SIG_APP 09 10 | | Signed Application |
| eRisk_Hub_Notice 04 13 | | eRisk Hub - Notice of Access |
| VP 0561 02 13 | 04 | Computer Network Security and Privacy Endorsement |
| VP 05 35 08 13 | 05 | Amendment - Cancellation/Non-Renewal - Minimum Earned Premium |
| VP 06 82 09 15 | 06 | Exclusion - Violation of Trade or Economic Sanctions Laws or Regulations |
| VP 02 75 12 15 | 07 | Professional Services |
| VP 03 08 12 15 | 08 | Amendment To Criminal/Dishonest/Knowingly Wrongful Acts (Exclusion A) |
| VP 03 18 02 16 | 09 | Worldwide Territory Endorsement |
| VP 02 79 02 16 | 10 | Amended Named Insured |
| VP 07 38 04 16 | 11 | Service Of Suit |
| VP 02 91 04 16 | 12 | Independent Contractor Endorsement |

Policy Number: VNPL002153                                          VP 00 06 12 15

Insured Name: Project Veritas

Number:                                                    Effective Date: 09/29/2016

# PROFESSIONAL LIABILITY INSURANCE POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY WHICH APPLIES ONLY TO CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD. THE LIMITS OF LIABILITY SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENT OF CLAIM EXPENSES.**

**PLEASE REVIEW THIS POLICY CAREFULLY WITH YOUR INSURANCE BROKER OR ADVISOR.**

**ALL TERMS PRINTED IN BOLD ARE DEFINED IN THE DEFINITIONS SECTION OF THIS POLICY, SECTION VIII.**

In consideration of the payment of the Premium, the undertaking of the **Insured** to pay the Deductible herein and in reliance upon all statements made and information in the **Application**, which is attached hereto and made a part of this Policy, and subject to all of the terms and conditions of this Policy, the **Company** agrees with the **Insured** as follows:

## I.   INSURING AGREEMENT

The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** that the **Insured** shall become legally obligated to pay because of **Claims** for **Wrongful Acts**, provided that:

**A.** the **Claim** is first made against the **Insured** during the **Policy Period**;

**B.** the **Claim** arises out of **Wrongful Acts** committed by an **Insured** which first commenced on or after the **Retroactive Date**;

**C.** written notice of the **Claim** is received by the **Company** during the **Policy Period** or within sixty (60) days thereafter; and

**D.** prior to the inception date of this Policy no **Insured** knew, nor could have reasonably foreseen, any **Wrongful Acts** or other circumstances that reasonably might result in a **Claim** covered by this Policy.

## II.   COVERAGE EXTENSIONS

### A. Disciplinary Proceedings

The **Company** will reimburse the **Insured** for **Disciplinary Proceeding Loss**. The maximum the **Company** will pay for all **Disciplinary Proceeding Loss** covered by this Policy shall be $10,000 in the Aggregate, regardless of the number of **Insureds** against whom **Disciplinary Proceedings** are instituted during the **Policy Period** or the number of **Disciplinary Proceedings** that are instituted against the **Insureds** during the **Policy Period**. As a condition precedent to coverage, the **Disciplinary Proceeding** must be first instituted against the **Insured** during the **Policy Period** and the **Disciplinary Proceeding** must arise from a **Wrongful Act** committed by the **Insured** that first commences on or after the **Retroactive Date** and before the expiration of the **Policy Period**. The **Company** will have no duty to pay any **Disciplinary Proceeding Loss** unless the **Insured** provides written notice of the **Disciplinary Proceeding** to the **Company** during or within sixty (60) days after the **Policy Period**.

© Vela Insurance Services
All rights reserved.

The Deductible amount will not apply to this subsection and any **Disciplinary Proceeding Loss** will not reduce the Each **Claim** or Aggregate Limits of Liability.

The **Company** will have no obligation to appoint counsel for the **Insured** to respond to a **Disciplinary Proceeding**.

**B. Response to Subpoenas**

The **Company** will reimburse the **Insured** for reasonable and necessary fees, costs, and expenses incurred by or on behalf of the **Insured** in order to respond to a subpoena that is served on the **Insured** during the **Policy Period** and which arises from the performance of the **Insured's Professional Services**, provided the **Insured** is not a party to the lawsuit, arbitration or other proceeding that the subpoena is issued in connection with. The maximum the **Company** will pay for an **Insured's** response to any such subpoena served on the **Insured** during the **Policy Period** shall be $2,500. The maximum the **Company** will pay for all subpoenas served on any **Insureds** during the **Policy Period** shall be $5,000 in the Aggregate, regardless of the number of such subpoenas served on the **Insureds** during the **Policy Period**. As a condition precedent to coverage, the subpoena must first be served on the **Insured** during the **Policy Period** and the **Insured's Professional Services** that the subpoena arises from must have first commenced on or after the **Retroactive Date**. The **Insured** must give written notice to the **Company** of the subpoena during or within sixty (60) days after the **Policy Period**.

The Deductible amount will not apply to this subsection and any amounts paid pursuant to this subsection will not reduce the Each **Claim** or Aggregate Limits of Liability.

The **Company** will have no obligation to appoint counsel for the **Insured** to respond to a subpoena covered by this Section **II. B.** of the Policy.

## III. DEFENSE AND SETTLEMENT

**A.** The **Company** has the right and duty to select counsel and to defend any **Claim** covered by this Policy, even if any of the allegations are groundless, false or fraudulent.

**B.** If the applicable law gives the **Insured** the right to select independent defense counsel to defend any **Claim** covered by this Policy then the **Insured** may select independent defense counsel to defend the **Claim**. Such independent counsel shall:

**1.** have at least ten (10) years of experience in the defense or similar matters in the same jurisdiction where the **Claim** is being defended; and

**2.** maintain lawyer's professional liability insurance coverage with Each **Claim** and Aggregate Limits of Liability that are at least equal to the Each **Claim** and Aggregate Limits of Liability of this Policy.

The **Insured** and its independent defense counsel shall provide all non-privileged information and documentation requested by the **Company** and shall cooperate with the **Company** with respect to the defense, investigation and settlement of the **Claim**.

Subject to the Deductible amount and the Each **Claim** and Aggregate Limits of Liability, the **Company** shall be liable only for reasonable and necessary **Claim Expenses** charged by the **Insured's** independent counsel at the hourly billing rates customarily paid by the **Company** for the defense of similar **Claims** in the same jurisdiction where the **Claim** is being defended. All such **Claim Expenses** shall reduce the Policy's Limits of Liability and Deductible amount.

**C.** The **Company** shall have no duty to appeal any judgment entered against any **Insured** if in the **Company's** judgment there is no reasonable basis for an appeal. The decision to appeal from a judgment entered against any **Insured** is solely at the discretion of the **Company**.

© Vela Insurance Services
All rights reserved.

**D.** The **Company's** duty to defend and to pay **Loss** or **Claim Expenses** on behalf of any **Insured** shall immediately terminate if either the Each **Claim** or Aggregate Limits of Liability of this Policy become exhausted by payment of **Loss** and/or **Claim Expense**.

**E.** The **Company** shall have the right to negotiate and effectuate the settlement of all **Claims,** as the **Company** deems expedient, whether within or in excess of the Deductible amount. However, the **Company** will not settle any **Claim** without the consent of the **Named Insured**, which consent will not be unreasonably withheld. If the **Named Insured** refuses to consent to a settlement demand recommended by the **Company** (hereinafter referred to as the "recommended settlement amount") and instead elects to contest such **Claim** or continue legal proceedings in connection therewith, the **Company's** liability for such **Claim** shall, subject to the Policy's Each **Claim** and Aggregate Limits of Liability and Deductible amount, be limited to the recommended settlement amount, plus all **Claim Expenses** in excess of the Deductible amount incurred through the time the **Named Insured** refused to consent to the recommended settlement amount, plus fifty percent (50%) of all **Claim Expenses** incurred after the **Named Insured** refused to consent to the recommended settlement amount, and fifty percent (50%) of all covered **Loss** in excess of the recommended settlement amount.

## IV. EXCLUSIONS

This Policy does not apply to any **Claim** and the **Company** will not pay any **Loss** or **Claim Expense** for any **Claim** alleging, arising out of, based upon, or attributable to any actual or alleged:

### A. Criminal/Dishonest/Knowingly Wrongful Act(s)
Criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**.

However, the preceding paragraph of this exclusion shall not apply to any natural person who qualifies as an **Insured** under this Policy, other than the **Named Insured**, if such natural person did not participate in, ratify or acquiesce in such conduct.

Also, this Policy does not cover any **Loss** or **Claim Expenses** for:

1. criminal penalties, criminal fines, criminal sanctions, charges or indictments;

2. cost associated with bail bonds;

3. cost or fees associated with criminal investigations; and

4. any other costs or fees associated with any criminal proceedings of any kind.

### B. Profit or Advantage
Gaining by any **Insured** of any profit or advantage to which the **Insured** was not legally entitled.

### C. Bodily Injury/Property Damage
Bodily Injury, sickness, disease or death of any person, including emotion distress or mental anguish, and any injury to, or destruction of, any tangible property, or **Loss** of use of any such tangible property.

### D. Intellectual Property
Infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan, patent, or other intellectual property rights, including **Claims** for unfair competition, palming off, or violations of the Lanham Act.

### E. Employment-Related Practices

1. Termination of employment in a manner that is against the law or wrongful;

© Vela Insurance Services
All rights reserved.

2. Discrimination against an employee on account of race, ethnicity, religion, sex, age, disability, sexual preference or any other protected category or characteristic under any local, state or federal law, regulation or ordinance;

3. Refusal to employ or promote;

4. Wrongful demotion or transfer;

5. Sexual or non-sexual harassment of any employee; or

6. Employment-related practices, policies, acts or omission, including but not limited to coercion, retaliation, wrongful discipline or evaluation, defamation, invasion of privacy, false imprisonment, humiliation, intentional or negligent infliction of emotional distress and malicious prosecution.

This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity. This exclusion applies notwithstanding anything to the contrary contained in **Exclusion P**, below.

**F. Violation of Statutes**
Violation of:

1. the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisors Act of 1940 or any state Blue Sky or securities law;

2. the Employee Retirement Income Security Act of 1974 (ERISA);

3. the Racketeer Influenced and Corrupt Organizations Act (commonly known as RICO), Title 18 U.S.C. Section 1960, et seq., or any similar state or local anti-racketeering statute or law;

4. the Fair Labor Standard Act, the National Labor Relations Act of 1938, the Workers Adjustment and Retraining Notification Act (Public Law 10037991988) (WARN), the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), or the Occupational Safety and Health Act (OSHA) or any similar state or local statute;

5. the Health Insurance Portability & Accountability Act (HIPPA) or any similar state or local statute; or

6. any state or federal antitrust laws, price-fixing or restraint of trade law; including any rules or regulations promulgated under any of the foregoing statutes and any amendments to the statutes referred to above.

**G. Liability Assumed by Contract**
Liability of others assumed by the **Insured** under any oral or written contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement.

**H. Breach of Express Guarantee or Warranty**
Breach of any express warranty or guaranty.

**I. Insurance / Bonds**
Failure of any **Insured** to procure or maintain insurance or bonds.

**J. Pollution, Asbestos and Lead**

1. Threatened discharge, dispersal, seepage, migration, release or escape, contact with, exposure to, existence of, inhalation of, ingestion of, contamination by or presence of **Pollutants** regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any actual or alleged injury or damage; or

2. Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the actual or potential effects of **Pollutants**; or

3. **Claim** or suit by or on behalf of a governmental authority or others for injury or damage because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the actual or potential effects of **Pollutants**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, lead, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

K. **Unsolicited Faxes and Electronic Mail**
Violation of the Telephone Consumer Protection Act of 1991, and any amendments thereto, or any other **Claim** based upon or arising from the unsolicited sending of information or advertising by fax, electronic mail (email), or any other means where prohibited by law.

L. **Insureds versus Insureds**
**Claim** by or on behalf of any **Insured**, or any present or former shareholder, partner, officer, director, or employee of any **Insured**, against any other **Insured**.

M. **Cost Guarantees**
Cost guarantees or estimates of probable costs, or cost estimates being exceeded.

N. **War**

1. War, including undeclared or civil war;

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

O. **Business Enterprise**
**Professional Services** performed, directly or indirectly, by the **Insured** when acting in the capacity as a former, existing or prospective officer, director, shareholder, partner, manager, or member (or any equivalent position), of any entity or organization, if such entity or organization is not a **Named Insured** or **Subsidiary**.

P. **Third Party Discrimination and Sexual Harassment**

1. Sexual harassment of any customer or client of an **Insured** or any other natural person who is not an employee of an **Insured**; and

2. Discrimination against any customer or client of an **Insured** or any other natural person who is not an employee of an **Insured** on account of race, ethnicity, religion, sex, age, disability, sexual preference or any other protected category or characteristic under any local, state or federal law, regulation or ordinance.

## V.   LIMITS OF LIABILITY AND DEDUCTIBLE

A. The **Company's** maximum Aggregate Limit of Liability for all **Loss** and **Claim Expenses** from Each **Claim** first made during the **Policy Period** shall not exceed the Each **Claim** Limit of Liability set forth on the Declarations Page, which amount shall be part of and not in addition to the Aggregate Limit of Liability stated on the Declarations Page.

© Vela Insurance Services
All rights reserved.

**B.** The **Company's** maximum Limit of Liability for all **Loss** and **Claim Expenses** from all **Claims** first made during the **Policy Period** shall not exceed the Aggregate Limit of Liability set forth on the Declarations Page, regardless of the number of **Claims**.

**C.** **Claim Expenses** are part of and not in addition to the Each **Claim** and Aggregate Limits of Liability set forth on the Declarations Page, and payment by the **Company** of **Claim Expenses** shall reduce and may exhaust such Limits of Liability.

**D.** The Deductible amount stated in the Declarations Page shall apply to **Loss** and **Claim Expenses** and shall apply to each and every **Claim**. This Deductible shall be borne by the **Insured**, remain uninsured and not reduce or increase the Limits of Liability. In the event that the **Company**, in its sole discretion, decides to pay amounts within the Deductible, the **Named Insured**, and any other **Insureds** against whom the **Claim** is made, shall be jointly and severally liable to repay the **Company** such amounts within thirty (30) days of a request by the **Company**.

**E.** The **Company** may pay any part, or all, of the Deductible amount to effect settlement of a **Claim**, subject to the consent of the **Named Insured**, and upon notification of the action taken, the **Named Insured** shall promptly reimburse the **Company** for such part of the Deductible amount as has been paid by the **Company**.

**F.** If the **Named Insured** does not promptly reimburse the **Company** for any Deductible amount owed, then any costs incurred by the **Company** in the collection of the Deductible amount will be added and applied in addition to the applicable Deductible amount without any limitation. These costs include, but are not limited to, collection agency fees, attorneys' fees and interest.

## VI.  DUTIES IN THE EVENT OF A CLAIM

**A.** If a **Claim** is made against any **Insured**, the **Insured** shall provide written notice as soon as practicable to the **Company**, and shall forward to the **Company**, as soon as practicable, every demand, notice, summons, complaint or other process or documents received by the **Insured** or their representative. In no event may an Insured provide such notice of a **Claim** to the **Company** any later than sixty (60) days after the expiration of the **Policy Period**.

**B.** If, during the **Policy Period**, an **Insured** becomes aware of any **Wrongful Act** or other circumstances that might reasonably result in a **Claim**, and during the **Policy Period** the **Insured** gives the **Company** sufficient written notice of such **Wrongful Act** or circumstances, then the **Company** will treat any subsequently resulting **Claim** as if it had been made against the **Insured** and reported during the **Policy Period**, provided that written notice of such **Claim** is given as soon as practicable to the **Company** after the **Insured** is first made aware of the **Claim**.

All notices of **Wrongful Acts** or other circumstances that might reasonably result in a **Claim,** must include the following information:

1.  a description of the alleged **Wrongful Act** or circumstances in question;

2.  the identities of the potential claimants;

3.  the consequences which have resulted or may result from the alleged **Wrongful Act** or circumstances;

4.  the **Loss** which may result from the alleged **Wrongful Act** or circumstances; and

5.  how and when the **Insured** first became aware of the alleged **Wrongful Act** or circumstances.

**C.** Any notice of a **Claim** or of **Wrongful Acts** or other circumstances that might reasonably result in a **Claim** provided by the **Insured** to the **Company** is not effective until it is received by the **Company**. All such notices shall be sent to:

© Vela Insurance Services
All rights reserved.

Vela Insurance Services, a W. R. Berkley Company
Claims Department
11516 Nicholas Street, Suite 301
Omaha, NE 68154
TELEPHONE: (866) 915-7478 or (402) 492-8352
FAX: (402) 492-3253
EMAIL: claims@vela-ins.com

D. No insurance agent or broker is authorized to act as the **Company's** agent to receive reports or notices required by this Policy, and any reports or notices provided to an insurance agent or broker shall not constitute compliance with the terms and conditions of this Policy.

E. No **Insured** may make any payment, assume any obligation, incur any expense, or settle any **Claim** without the advance written consent of the **Company**, except at the sole expense of the **Insured**.

F. After an **Insured** becomes aware of a **Claim** or alleged **Wrongful Acts** or other circumstances that might reasonably result in a **Claim**, no **Insured** may agree with the Claimant to arbitration, mediation, or any other form of alternative dispute resolution, without the prior written consent of the **Company**.

G. All **Insureds** must cooperate with the **Company**, and provide such assistance and information as the **Company** may request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required. The **Insured** shall attend hearings, depositions, and trials if requested by the **Company**. The **Insured** shall assist in the investigation and defense of **Claims** when requested by the **Company**, including, but not limited to, helping to effectuate settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action that may increase the **Insured's** exposure for **Claim Expenses** or **Loss**.

## VII. MULTIPLE CLAIMS AND WRONGFUL ACTS

Multiple **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be considered a single **Claim**. All such **Claims**, whenever made, will be deemed to have been first made at the time the earliest such **Claim** was first made. All such **Claims** will be covered, if at all, only under the Policy in effect, if any, when the earliest such **Claim** was first made and reported to the **Company**. Subsequent policies will not apply to any such **Claims**.

## VIII. DEFINITIONS

A. **Application** means all Policy **Applications** submitted by the **Named Insured** to the **Company**, including any attachments or other materials submitted therewith or incorporated therein for any Policy for which this Policy is a renewal or replacement. The **Application** is incorporated herein by reference and shall become a part of this Policy.

B. **Claim** means a written demand against an **Insured** for **Loss** because of a **Wrongful Act**, including but not limited to:

1. the service of a summons and complaint or an arbitration demand or the commencement of an administrative proceeding; or

2. a request to toll the statute of limitations.

A **Claim** does not include a **Disciplinary Proceeding**.

C. **Claim Expenses** means reasonable and necessary costs, charges, fees (including attorney's fees and expert fees) and expenses, incurred by the **Company** or with the **Company's** prior written consent,

© Vela Insurance Services
All rights reserved.

resulting from the adjustment, investigation or defense of a **Claim** covered by this Policy. **Claim Expenses** also includes:

1. premiums on appeal bonds required if the **Company** appeals from any judgment entered in any **Claim** to which this Policy applies, but only for that portion of premium for the bond which is for **Loss** covered by this Policy and only to the extent that the premium does not exceed the applicable Each **Claim** and Aggregate Limits of Liability. The **Company** will also pay the premiums on bonds in amounts up to the applicable Each **Claim** and Aggregate Limits of Liability to release attachments in any **Claim** defended by the **Company**. The **Company** has no obligation to apply for or furnish any bond; and

2. post-judgment interest on that portion of any judgment which is for **Loss** covered by this Policy, and which does not exceed the applicable Each **Claim** and Aggregate Limits of Liability, which accrues until the **Company** has paid or tenders to the plaintiff or deposits in court, the amount of such **Loss**, plus post-judgment interest accrued until the time of such payment, tender or deposit.

    **Claim Expenses** does not include salaries, wages, overhead, employment benefits, or expense owed or paid by an **Insured**.

D. **Company** means the insurer identified in the Declarations Page.

E. **Disciplinary Proceeding** means any state, federal or other licensing board or agency inquiry or proceeding concerning the **Insured's** eligibility or license to continue to engage in the **Insured's Professional Services**.

F. **Disciplinary Proceeding Loss** means reasonable and necessary fees, costs, and expenses incurred by an Insured in connection with the investigation or defense or appeal of any **Disciplinary Proceeding**.

    **Disciplinary Proceeding Loss** does not include fines, penalties or sanctions assessed against an **Insured** nor does it include expenses, salaries, wages, benefits, or overhead of, or paid to, an **Insured**.

G. **Insured(s) means:**

1. The **Named Insured** as listed on the Declarations Page;

2. Any **Subsidiary**;

3. Any partner, director or officer of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** while the partner, director or officer is acting in their respective capacity as such;

4. Any employee of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**;

5. Any former partner, director, officer, or employee of the **Name Insured** or **Subsidiary** but only with respect to **Professional Services** performed on behalf of the **Named Insured** or **Subsidiary** prior to the termination of that respective capacity;

6. The current spouse or domestic partner of any current partner, director, officer or employee of the **Named Insured** or **Subsidiary,** but solely with respect to the liability of such **Insured** that is otherwise covered by this Policy;

7. The heirs, executors, administrators, and legal representatives of any **Insured** in the event of death, incompetency, insolvency or bankruptcy of that **Insured**, but solely with respect to the liability of such **Insured** that is otherwise covered by this Policy; and

**8.** A limited liability company, if the **Named Insured** or any other **Insured** exists as such, along with all past and present members of any such limited liability company, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**.

**H. Loss means:**

**1.** Compensatory damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy; and

**2.** Punitive, exemplary or multiple damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy, but only if such punitive, exemplary or multiple damages are insurable under the law of the jurisdiction that is applicable to the **Claim**;
However, **Loss** does not include:

   **(a)** the cost of complying with an award for equitable, injunctive or other non-monetary relief;

   **(b)** sanctions, fines or penalties;

   **(c)** any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim**;

   **(d)** the return or withdrawal of fees or charges for **Professional Services** rendered by an **Insured**; and

   **(e)** workers' compensation, disability, unemployment, social security, or any other employment benefit.

**I. Named Insured** means the **Named Insured** listed on the Declarations Page.

**J. Personal and Advertising Injury** means publication or utterance of oral or written material in connection with the **Insured's** performance or advertising of **Professional Services** that violates a person's right of privacy or publicity or which libels or slanders a person or organization.

**K. Policy Period** means the time period specified on the Declarations Page, during which this Policy is in effect unless cancelled.

**L. Professional Services** means only those **Professional Services** listed on the Declarations Page rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation.

**M. Related** means logically or causally connected by reason of common facts, circumstances, situations, transactions, events or decisions.

**N. Retroactive Date** means the **Retroactive Date** set forth on the Declarations Page.

**O. Subsidiary** means an entity in which the **Named Insured** owns more than fifty percent (50%) of the issued and outstanding voting stock on the inception date of the **Policy Period**.

This Policy only provides coverage to a **Subsidiary** for **Claims** for **Wrongful Acts** which occur while the **Named Insured** owns more than fifty percent (50%) of the issued and outstanding voting stock of the **Subsidiary**.

**P. Wrongful Act** means any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury,** committed solely in the rendering of or failure to render **Professional Services** by an **Insured**.

## IX. GENERAL CONDITIONS

### A. TERRITORY

This Policy applies to **Wrongful Acts** anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America or where coverage is otherwise prohibited by the United States Office of Foreign Assets Control, provided that the **Claim** and any resulting lawsuit is brought within the United States, its territories, possessions or Canada.

### B. EXTENDED REPORTING PERIOD

1. If this Policy is either terminated or not renewed by the **Named Insured** or the **Company** for any reason other than nonpayment of premium or failure to comply with the  terms and conditions of this Policy, the **Named Insured** shall have the right to purchase an Extended Reporting Period of twelve (12) months in duration for payment of 75% of the premium stated on the Declarations Page, or twenty four (24) months in duration, for payment of 125% of the premium stated on the Declarations Page, or thirty six (36) months in duration, for payment of 175% of the premium stated on the Declarations Page. This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due, is received by the **Company** within thirty (30) days after the expiration of the **Policy Period**.

2. If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy will be extended to apply to **Loss** and **Claim Expenses** from **Claims** that are first made and reported to the **Company** during such Extended Reporting Period but only for **Wrongful Acts** committed before the end of the **Policy Period** and which first commence after the **Retroactive Date**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. The Each **Claim** and Aggregate Limits of Liability for the Extended Reporting Period shall be part of and not in addition to the Each **Claim** and Aggregate Limits of Liability for the **Policy Period**.

### C. CANCELLATION

1. The first **Named Insured** may cancel this Policy by surrender thereof to the **Company**, or by written notice to the **Company** stating when thereafter such cancellation shall be effective. Such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.

2. The **Company** may cancel this Policy by mailing or delivering to the first **Named Insured** written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. However, if the **Company** cancels this Policy because the **Insured** has failed to pay a Premium when due, this Policy may be canceled by the **Company** by mailing or delivering a written notice of cancellation to the first **Named Insured** stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The notice of cancellation shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the **Company** shall be equivalent to mailing.

3. If this Policy is canceled, we will send the first **Named Insured** any Premium refund due. If the **Company** cancels, the refund will be pro rata. If the first **Named Insured** cancels, the refund may be less than pro rata. However, in no event shall the **Company** retain less than the Minimum Earned Premium at Inception. The cancellation will be effective even if the **Company** has not made or offered a refund.

### D. OTHER INSURANCE

This Policy is excess over any other valid and collectible insurance regardless of whether such other insurance is primary, excess, contributory, contingent, or otherwise, unless such other insurance is written

to be specifically excess over the insurance provided by this Policy. Other insurance includes benefits under a risk retention group.

## E. REPRESENTATION

In issuing this Policy, the **Company** has relied upon the statements, representations and information in the **Application**. The **Named Insured** acknowledges and agrees that all such statements, representations and information provided in the **Application** are true and accurate, are made or provided in order to induce the **Company** to issue this Policy, and are material to the **Company's** acceptance of the risk to which this Policy applies.

In the event that any of the statements, representation or information in the **Application** are not true and accurate, this Policy shall be void with respect to the **Named Insured** and any other **Insured** who, as of the date the **Application** was signed, knew about the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

1. the knowledge of any **Insured** who is a present or former chief financial officer, in-house general counsel, partner, chief executive officer, president or chairperson of the **Named Insured** shall be imputed to the **Named Insured**;

2. the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the **Insureds**; and

3. except as provided in (1.) above, the knowledge of an **Insured** who did not sign the **Application** shall not be imputed by any other **Insured**.

## F. ASSIGNMENT

The interests or rights hereunder of any **Insured** under this Policy are not assignable, except with the prior written consent of the **Company.**

## G. SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery against any person or organization, or any other insurer which may provide coverage for any **Loss** or **Claim Expense**. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and enforce such rights. The **Insured** shall do nothing to prejudice such rights. Any recoveries shall be applied first to subrogation expenses, second to **Loss** and **Claim Expenses** paid by the **Company**, and third to the Deductible. Any additional amounts recovered shall be paid to the first **Named Insured.**

## H. CHANGES

Notice to any agent or knowledge by any agent or broker shall not effect a waiver or change in any part of this Policy or estop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed except by an endorsement, in writing, issued by the **Company** to the first **Named Insured** and forming a part of this Policy.

## I. ACTION AGAINST THE COMPANY

1. No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by a judgment against the **Insured** after an actual and contested trial or arbitration proceeding on the merits, or by a written settlement agreement executed by the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

**2.** Any person or the legal representatives thereof who has secured such judgment or written settlement agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance coverage afforded by this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against the **Insured** or its legal representative, except to the extent that a direct action against an insurer is permitted in the jurisdiction in which the underlying lawsuit is pending. Bankruptcy or insolvency of the **Insured** or its successors in interest shall not relieve the **Company** of its obligations hereunder.

## J. MERGERS AND ACQUISITIONS

**1.** If during the **Policy Period**, any of the following events occur:

   **(a)** the acquisition of 50.1% or more of the assets of any **Named Insured** by another entity;
   **(b)** the merger or consolidation of any **Named Insured** into or with another entity, such that the **Named Insured** is not the surviving entity; and/or

   **(c)** the appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any **Named Insured**;

then coverage under this Policy will continue in full force and effect with respect to **Claims** for **Wrongful Acts** that were committed before such event, but coverage will automatically terminate with respect to **Claims** for any **Wrongful Acts** committed after such event. After any such event, this Policy may not be canceled by the **Named Insured** and the entire premium for the Policy will be deemed fully earned.

**2.** If during the **Policy Period**, the **Named Insured**:

   **(a)** acquires, either directly or indirectly, more than fifty percent (50%) of the issued and outstanding voting stock of another entity or organization or creates another entity or organization in which the **Named Insured**, either directly or indirectly, owns more than fifty percent (50%) of the issued and outstanding voting stock; or
   **(b)** acquires any entity or organization by merger into or consolidation with the **Named Insured**;

then such acquired entity or organization shall be covered under this Policy with respect to **Claims** for Wrongful Acts that first commence after such acquisition or creation.

If the total revenue of such acquired entity or organization, as reflected in the most recent consolidated financial statements of the acquired entity or organization or otherwise exceeds ten percent (10%) of the total revenue of the **Named Insured** and its **Subsidiaries**, the **Named Insured**, as a condition precedent to coverage with respect to such entity or organization, shall notify the **Company** within ninety (90) days after the effective date of such acquisition or creation and the **Named Insured** must agree to any additional Premium and any additional terms and conditions required by the **Company**.

## K. VALUATION AND CURRENCY

All Premiums, Limits of Liability, Deductible amounts, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than the United States dollars or if **Claim Expenses** are charged in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the prevailing exchange rate as published on OANDA.com at the time the expenses were incurred.

## L. AUTHORIZATION

By acceptance of this Policy, the **Insureds** agree that the first **Named Insured** as shown on the Declarations Page will act on their behalf with respect to the giving and receiving of any notice provided for in this Policy, the payments of Premiums, the receipt of any return Premiums that may become due under this Policy and the agreement to and acceptance of endorsements.

© Vela Insurance Services
All rights reserved.

**M. BANKRUPTCY**

The **Named Insured's** bankruptcy or insolvency does not relieve the **Company** of its obligations under this Policy.

**N. ARBITRATION**

In the event of any dispute regarding the interpretation of this Policy, or any other dispute between the **Company** and an **Insured** concerning or arising out of this Policy, such dispute will be referred to binding arbitration, with such arbitration to take place in the vicinity of Chicago, Illinois. The arbitration will be governed by the Commercial Arbitration Rules then in effect of the American Arbitration Association or by the Comprehensive Arbitration Rules and Procedures then in effect of the Judicial Arbitration and Mediation Service ("JAMS").

The arbitration shall be decided by a three person arbitration panel consisting of a party-appointed (non-neutral) arbitrator for the **Insured**; party-appointed (non-neutral) arbitrator for the **Company** and a neutral arbitrator ("the umpire").

The party initiating the arbitration ("the claimant") shall send a written arbitration demand to the other party ("the respondent"), which describes the basis for the dispute and provides the name, address and other contact information for the claimant's party-appointed (non-neutral) arbitrator. The respondent then shall have thirty (30) days to send a written notice to the claimant of the name, address and other contact information of the respondent's party-appointed (non-neutral) arbitrator. The two party-appointed arbitrators shall, within thirty (30) days after the appointment of the respondent's party-appointed (non-neutral) arbitrator, select the umpire.

In any arbitration involving a dispute regarding the interpretation of this Policy, the Policy shall be construed in an evenhanded manner without any provision in the Policy being construed against the drafter of the Policy.

**O. HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**Policy Number:  VNPL002153**
**Insured Name:Project Veritas**
**Number:  1**

**VP0285 07 07**

**Effective Date: 09/29/2016**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PENDING AND PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this Policy excludes any **Loss** or **Claim Expenses Arising Out Of** any pending or prior **Claims**, **Suits** or other litigation which existed as of the Inception Date of this Policy or to any **Loss** or **Claims Expenses Arising Out Of** any future **Claim Related** to such pending or prior **Claims, Suits** or other litigation.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

| | |
|---|---|
| **Policy Number:  VNPL002153** | **AD 66 16 04 09** |
| **Insured Name: Project Veritas** | |
| **Number:  2** | **Effective Date: 09/29/2016** |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MEDIA EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

    Professional Liability Coverage Part

---

In consideration of the premium charged, it is hereby understood and agreed that this Policy is amended as follows:

Section **III. DEFINITIONS,** I) "**Personal Injury**" is deleted in its entirety and replaced by the following:

    **I) "Personal Injury"** means injury, other than Bodily Injury, arising out of one or more of the following offenses:

        a)   False arrest, detention or imprisonment;
        b)   Malicious prosecution;
        c)   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
        d)   Oral or written publication of material that slanders, libels, or defames a person or organization or disparages the goods, products or services of a person or organization; or
        e)   Oral or written publication or material that violates a person's right of privacy.

Section **III. DEFINITIONS,** N) "**Wrongful Act**" is amended to add:

    4.  Media Injury.

Section **III. DEFINITIONS,** is amended to include the following:

    ·   "**Media Injury**" means infringement of copyright, trademark, service mark, trade name, trade dress, title or slogan committed in **Content** created or disseminated by the Insured and in the performance of **Professional Services**.

    ·   "**Content**" means mappings, drawings, advertisement, publicity, press release or article, publication, marketing or promotional item, broadcast, telecast or webcast.

Section **IV. EXCLUSIONS,** D. is deleted in its entirety and replaced by the following:

    D) based upon or arising out of: (a) infringement or inducement of infringement of patent or trade secret; or (b) unfair competition based upon infringement of patent or trade secret.

Section **IV. EXCLUSIONS,** is amended to include the following:

    ·   cost of recall, recovery, shipment, correction, reprinting, rebroadcast, re-telecast, or re-webcast caused by a defect or injurious condition in any **Content** or the costs of any services in connection with;

    ·   **Claim** made against the **Insured** by clients of the **Insured** if such **Claim** is a result of **Content** or materials furnished by the client of the **Insured**.

    ·   Based upon, **arising out of**, or in any way involving failure to obtain a software site license or to advise of the need to obtain a software site license.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

**Policy Number:  VNPL002153**                                    **AD 66 16 04 09**
**Insured Name: Project Veritas**
**Number:  3**                                    **Effective Date: 09/29/2016**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DISCRIMINATION CARVEBACK ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Coverage Part

**Section IV. EXCLUSIONS, P. Third Party Discrimination and Sexual Harassment, Paragraph 2.**, is deleted in its entirety.

All other terms and conditions of this Policy remain unchanged



As an adjunct of your policy with Vela Insurance Services, your company now has access to the **eRisk Hub**®, powered by NetDiligence®.

The eRisk Hub is a private web-based portal containing information and technical resources that can assist you in the prevention of network, cyber and privacy losses and support you in the timely reporting and recovery of losses if an incident occurs.

The eRisk Hub portal is an internet-based service that features news, content and services from leading practitioners in risk management, computer forensics, forensic accounting, crisis communications, legal counsel, and other highly-specialized segments of cyber risk.

Please note the following:

1. The eRisk Hub portal is a private site for customers of Vela Insurance Services only. Do not share portal access instructions with anyone outside your organization. You are responsible for maintaining the confidentiality of the **Access Code** provided to you.

2. Up to three individuals from your organization may register and use the portal. Ideal candidates include your company's Risk Manager, Compliance Manager, Privacy Officer, IT Operations Manager or Legal Counsel.

3. This portal contains a directory of experienced providers of cyber risk management and breach recovery services. Vela does not endorse these companies or their respective services. Before you engage any of these companies, we urge you to conduct your own due diligence to ensure the companies and their services meet your needs. Unless otherwise indicated or approved, payment for services provided by these companies is your responsibility.

4. Should you experience a data breach event, you may choose to contact the Breach Coach® listed in the portal for immediate triage assistance. Your initial consultation of up to one half-hour is free of charge. Please be aware that the Breach Coach service is provided by a third-party law firm. Therefore, contacting the Breach Coach does NOT satisfy the claim notification requirements of your policy.

To register for the Vela eRisk Hub:

1. Go to https://www.eriskhub.com/vela.php.

2. Complete the registration form. Your **Access Code** is **11710**.

3. Once registered, you can access the portal immediately with the User ID and password you established during registration.

**NetDiligence® is a leading cyber security and e-risk assessment services company.**
**For more information, visit www.NetDiligence.com.**

Policy Number: VNPL002153                                          VP 0561 02 13
Insured Name: Project Veritas
Number: 4                                                Effective Date: 09/29/2016

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMPUTER NETWORK SECURITY AND PRIVACY ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Coverage Part

| SCHEDULE | |
|---|---|
| **Sub-Limits of Insurance** | |
| Each Claim Limit | $250,000 |
| Aggregate Limit | $250,000 |
| | |
| **Retroactive Date** | 09/29/2014 |
| | |
| **Deductible** | $25,000 |
| | |
| **Endorsement Premium** | $Included |

With respect to the coverage provided by this endorsement, the Limits of Insurance, Retroactive Date and Deductible shown in the Declarations are replaced by the Limits of Insurance, Retroactive Date and Deductible designated in the Schedule above.  The Aggregate Limit is within, and not in addition to, the Aggregate Limit stated on the Declarations Page of the Policy.  In the event that a **Claim** is covered by this endorsement, and by the Professional Liability Insurance Policy (without this endorsement), then the Limits, Deductible and Retroactive Date for any such **Claim** shall solely be those stated above in this endorsement.

In consideration of the premium charged, it is hereby understood and agreed that the Professional Liability Insurance Policy is amended as follows:

Section I.  **INSURING AGREEMENT** is amended to include the following coverages:

A.  COMPUTER NETWORK SECURITY AND PRIVACY COVERAGE

The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** in excess of the   Deductible not exceeding the **Limit of Liability** to which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period**, for **Wrongful Acts** of an **Insured** which occurred on or after the **Retroactive Date** and prior to the end of the **Policy Period**, provide that:

1. Written notice of such **Claim** is received by the **Company** during the **Policy Period** or within sixty(60) days thereafter, and

2. Prior to the inception date of this Policy, no **Insured** knew, nor could have reasonably foreseen, that the **Wrongful Acts** might result in a **Claim**.

Solely for purposes of Coverage A. of this endorsement, the definition of **"Wrongful Act"** is amended to include any negligent act, error or omission by the **Insured** in the course of providing or managing **Computer Systems** security that results in:

1. The inability of a third party, who is authorized to do so, to gain access to **Computer Systems**, or

2. The failure to prevent **Unauthorized Access** to and/or **Unauthorized Use** of **Computer Systems** that result in:

   a. The destruction, deletion or corruption of electronic data on **Computer Systems**.
   b. **Theft of Data** from **Computer Systems**; or
   c. Denial of service attacks against **Internet** sites or computers, or

3. The failure to prevent transmission of **Malicious Code** from **Computer Systems** to third party computers and systems.

## B. PRIVACY LIABILITY

The Company will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** in excess of the Deductible not exceeding the **Limit of Liability** to which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period**, for **Wrongful Acts** of an **Insured** which occurred on or after the **Retroactive Date** and prior to the end of the **Policy Period**, provided that:

1. Written notice of such **Claim** is received by the **Company** during the **Policy Period** or within sixty(60) days thereafter, and

2. Prior to the inception date of this Policy, no **Insured** knew, nor could have reasonably foreseen, that the **Wrongful Acts** might result in a **Claim**.

Solely for purposes of Coverage B. of this Endorsement, the definition of **Wrongful Act** is amended to include:

1. Any negligent act, error or omission of the **Insured** resulting in theft of **Personally Identifiable Non-Public Information** that is in the care, custody or control of the **Insured** provided such theft takes place on or after the **Retroactive Date** set forth on the Declarations Page and before the end of the **Policy Period**.

2. The **Insured's** negligent failure to timely disclose a **Security Breach** in violation of any **Breach Notice Law**; provided such **Security Breach** must take place on or after the **Retroactive Date** set forth on the Declarations Page and before the end of the **Policy Period**.

3. Negligent failure by the **Insured** to comply with that part of a **Privacy Policy** that specifically:
   a. Prevents or prohibits improper or intrusive collection of **Personally Identifiable Non-Public Information** from a person;
   b. Requires notice to a person of the **Insured's** or use of, or the nature of the collection or use of his or her **Personally Identifiable Non-Public Information**;
   c. Provides a person with the ability to assent or withdraw assent (i.e. opt-in or opt-out) from the **Insured's** collection or use his or her **Personally Identifiable Non-Public Information**;
   d. Prohibits or restricts the Insured's disclosure, sharing or selling of a person's **Personally Identifiable Non-Public Information**;
   e. Requires the **Insured** to provide access to **Personally Identifiable Non-Public Information** or to correct incomplete or inaccurate **Personally Identifiable Non-Public Information** after a request is made by a person; or
   f. Mandates procedures and requirements to prevent the loss of **Personally Identifiable Non-Public Information**;

   And provided that the Insured must, at the time of such failure, have in force a **Privacy Policy** that addresses

those subsections above that are relevant to such **Claim**.

Section III. **DEFINITIONS** is amended to include:

**"Breach Notice Law"** means any state, federal or foreign statute or regulation that requires notice to persons whose **Personally Identifiable Non-Public Information** was accessed or may reasonably have been accessed by an unauthorized person.

**"Computer System"** means computer hardware, software, the **Named Insured's Internet Website** and the **Electronic Content** stored thereon, data storage and networking equipment that are linked together through a network of computers, including such networks accessible through the **Internet**, intranets, extranets or virtual private network.

**"Electronic Content"** means any data, e-mails, graphics, images net or web casting, sounds, text, or similar matter disseminated electronically, including matter disseminated electronically on the **Named Insured's Internet Website**, **Computer System** or the **Internet** but shall not mean content disseminated by other means of media transmittal by the **Insured**. **Electronic Content** shall not include **Technology Products**.

**"Internet"** means the worldwide public network of computers commonly known as the Internet, as it currently exists or may be manifested in the future.

**"Malicious Code** means any virus, Trojan Horse, worm or other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

**"Personally Identifiable Non-Public Information"** means an individual's name in combination with one or more of the following:

1.  Information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;
2.  Medical or health care information concerning the individual, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations issued pursuant to the Act; or
3.  The individual's social security number, drivers license or state identification number, credit, debit or other financial account numbers and associated security codes, access codes, passwords or pin codes that allows access to the individual's financial account information.

**"Privacy Policy"** means the internal or publicly accessible written documents that set for the **Insured's** policies, standards and procedures for collection, use, disclosure, sharing dissemination and correction or supplementation of, and access to, **Personally Identifiable Non-Public Information**.

**"Security Breach"** means **Unauthorized Access** and/or **Unauthorized Use** of **Computer Systems**, infection of **Computer Systems** by **Malicious Code** or transmission of **Malicious Code** from **Computer Systems**, whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **Security Breaches** or **Related** or repeated **Security Breaches** shall be considered a single **Security Breach** and be deemed to have occurred at the time of the first such **Security Breach**.

**"Technology Product"** means computer hardware including products, components and peripherals, computer software, computer firmware, computer data, electronic, telecommunications and wireless equipment created, designed, manufactured, sold, licensed, leased, handled or distributed by the **Insured** or on the **Insured's** behalf.

**"Theft of Data"** means the unauthorized taking, misuse or disclosure of information on **Computer Systems**, including but not limited to charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.

**"Unauthorized Access"** means access to a **Computer System** by an individual not authorized to do so by the **Insured**.

**"Unauthorized Use"** means the use of a **Computer System** by an individual not authorized to do so by the **Insured**.

**"Website"** means software, content and other materials accessible via the **Internet** at a designated Uniform Resource Locator (URL) address.

Section IV.  **EXCLUSIONS** is amended to include:

This Policy does not apply to any **Claim** or **Claim Expenses Arising Out Of** any actual or alleged:

- Loss of, or the transfer or attempted transfer of, by any person or entity, any funds, money, investments or assets of any type or nature.

- Lotteries, games of chance, sweepstakes or gambling of any type or nature.

**All other terms and conditions of the Policy remain unchanged. This endorsement is part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.**

**Policy: VNPL002153**                                                      **VP 05 35 08 13**
**Insured Name: Project Veritas**
**Number: 5**                                                   **Effective Date: 09/29/2016**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT – CANCELLATION/NON-RENEWAL - MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

Professional Liability Coverage Part

---

Paragraph C) of Section **X. Cancellation/Non-Renewal** is deleted and replaced by the following:

C)  If this policy is cancelled, the **Company** will send the first **Named Insured** any premium refund. If the **Named Insured** cancels, the refund may be less than pro-rata. If the **Company** cancels, the refund will be pro rata. However, in no event shall the **Company** retain less than 25% of the Total Premium shown in the Declarations. The cancellation will be effective even if the **Company** has not made or offered a refund.

**Policy Number: VNPL002153**  VP 06 82 09 15
**Insured Name: Project Veritas**
**Number: 6**  **Effective Date: 09/29/2016**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF TRADE OR ECONOMIC SANCTIONS LAWS OR REGULATIONS

This endorsement modifies insurance provided under the following:
Professional Liability Coverage Part

---

The **Company** shall not be liable to provide coverage, pay any claim, or provide any benefit hereunder to the extent that the provisions of such coverage, payment of such claim or provisions of such benefit would be in violation of any trade or economic sanctions law or regulation applicable to the **Company's** jurisdiction of domicile or those of another jurisdiction with which the **Company** is legally obligated to comply.

Policy Number: VNPL002153
Insured Name: Project Veritas
Number: 7

VP 02 75 12 15

Effective Date: 09/29/2016

# PROFESSIONAL SERVICES

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The **Professional Services** set forth on the Declarations Page is deleted in its entirety and replaced by the following:

| **PROFESSIONAL SERVICES:** |
|---|
| Solely in the performance of providing investigative reporting services. |

All other terms and conditions of this Policy remain unchanged.

Policy Number: VNPL002153

VP 03 08 12 15

Insured Name: Project Veritas

Number: 8

Effective Date: 09/29/2016

# AMENDMENT CRIMINAL / DISHONEST /KNOWINGLY WRONGFUL ACTS (EXCLUSION A.)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I.  Section **IV. EXCLUSIONS,** paragraph **A.**, is deleted in its entirety and replaced with the following:

**A.** Criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**.

However, the preceding paragraph of this exclusion shall not apply to any natural person who qualifies as an **Insured** under this Policy, other than the **Named Insured**, if such natural person did not participate in, ratify or acquiesce in such conduct.

Also, this Policy does not cover any **Loss** or **Claim Expenses** for:

1.  criminal penalties, criminal fines, criminal sanctions, charges or indictments;

2.  cost associated with bail bonds;

3.  costs or fees associated with criminal investigations; and

4.  any other costs or fees associated with any criminal proceedings of any kind.

Notwithstanding this exclusion, the **Company** will defend any **Claim** alleging, arising out of, based upon, or attributable to any alleged criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**, which is otherwise covered by this Policy, until there is an admission, judgment, or adjudication, by or against any **Insured,** that such conduct occurred.  The **Company** also agrees that such insurance as would otherwise be afforded under this Policy shall be applicable to any **Insured** who is a natural person, other than the **Named Insured**, who did not did not participate in, ratify or acquiesce in such conduct after having knowledge of such conduct.

All other terms and conditions of this Policy remain unchanged.

Policy Number: VNPL002153                                   VP 03 18 02 16
Insured Name: Project Veritas
Number: 9                                              Effective Date: 09/29/2016

---

# WORLDWIDE TERRITORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I.  **Section IX GENERAL CONDITIONS, A**. **TERRITORY**, is deleted and replaced with the following:

### A. TERRITORY
The Insurance afforded applies to **Wrongful Acts** anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America or where coverage is otherwise prohibited by the United States Office of Foreign Assets Control.

II. **Section IX GENERAL CONDITIONS, D. OTHER INSURANCE**, is deleted and replaced by the following:

### D. OTHER INSURANCE
This Policy is excess over:

1.  Any other valid and collectible insurance regardless of whether such insurance is primary, excess, contributory, contingent, or otherwise, unless such other insurance is written to be specifically excess over the insurance provided by this Policy. Other insurance includes benefits under a risk retention group; and

2.  Any other applicable insurance whether such insurance is primary, excess, contributory, contingent or any other basis that is coverage required by law, regulation or other governmental authority in a part of the Coverage Territory outside the United States of America (including its territories and possessions), Puerto Rico or Canada.

III. The following section is added to the Policy:

### X. EXPANDED COVERAGE TERRITORY
1.  If a **Claim** is brought in a part of the Coverage Territory that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and the **Company** is prevented by law, or otherwise, from defending the **Insured**, the **Insured** will initiate a defense of the **Claim**. The **Company** will pay the **Insured** for any **Loss** and **Claim Expenses** that the **Insured** became legally obligated to pay because of a **Claim** for **Wrongful Acts**, for which the **Company** would have paid had the **Company** been able to exercise their right and duty to defend.

    If the **Insured** becomes legally obligated to pay **Loss** and **Claim Expenses** because of a **Claim** for **Wrongful Acts** to which this insurance applies in a part of the Coverage Territory that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and the **Company** is prevented by law, or otherwise, from paying such sums on the **Insured**'s behalf, the **Company** will reimburse the **Insured** for such sums.

2.  The **Insured** must fully maintain any coverage required by law, regulation or other governmental authority during the **Policy Period**, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

All other terms and conditions of this Policy remain unchanged.

Policy Number: VNPL002153
Insured Name: Project Veritas
Number: 10

VP 02 79 02 16

Effective Date: 09/29/2016

---

# AMENDED NAMED INSURED

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The **Named Insured** shown on the Declarations Page is the first **Named Insured** when referenced in the Policy. The **Named Insured** is amended to include the following:

| NAMED INSURED: | RETROACTIVE DATE: |
| --- | --- |
| Project Veritas Action Fund | 9/29/2014 |

All other terms and conditions of this Policy remain unchanged.

Policy Number: VNPL002153

Insured Name: Project Veritas

Number: 11

VP 07 38 04 16

Effective Date: 09/29/2016

# SERVICE OF SUIT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the Statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon Janet Shemanske, or her nominee of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260, and that in any suit instituted against the Company upon this policy, it will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.  Nothing herein shall constitute a selection or designation of forum, or a waiver of any of the Company's rights to select a forum or court, including any of the federal courts of the United States.

All other terms and conditions of this Policy remain unchanged.

Policy Number: VNPL002153
Insured Name: Project Veritas
Number: 12

VP 02 91 04 16

Effective Date: 09/29/2016

---

# INDEPENDENT CONTRACTOR ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Section VIII. A DEFINITION, G. Insured,** is amended to include the following:

9. Independent contractors of the Named **Insured** while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**.

All other terms and conditions of this Policy remain unchanged.



**VELA**

INSURANCE SERVICES
*a W. R. Berkley Company*

## SPECIFIED PROFESSIONS PROFESSIONAL LIABILITY RENEWAL APPLICATION

1  Name of Insured

*Project Veritas*

Address *Project Veritas Action Fund (as additional named insd)*
*12-14 W. Boston Post Rd. No 145 148*
*Mamaroneck NY 10543*

Website *projectveritas.com*

2  Have there been any changes in the nature of the Applicant's business in the last 12 months ? If yes, please explain:
*NO*

3  During the past 12 months has the name of the firm changed or has any other business been acquired, merged into or consolidated with the Applicant ?  ☐ YES  ☒ NO

If yes, please explain detailing any liabilities assumed. *N/A*

4  List gross receipts from activities for which coverage is currently provided:

**Gross Receipts**

Last Year     $ *4,310,122*

Current Year *(based on 12 months)*     $ *4,724,356*

5  Describe the (5) largest jobs or projects in the past year:

| Name of Client | Services Provided | Gross Billing / Fees |
|---|---|---|
| *Project Veritas* | *Accepts unrestricted* | *Contributions* |
| *to our General Revenue fund.* | | |
| *Project Veritas* | *determines which* | *investigations* |
| *to undertake,* | *when to conduct the investigations and* | |
| *how to conduct* | *the investigations.* | |

NOTICE TO THE APPLICANT *Project Veritas has no obligations to "clients."*

The undersigned declares that to the best of his/her knowledge and belief that the statements set forth herein are true. The undersigned further declares that any occurrence or event taking place prior to the effective date of the insurance applied for which may render inaccurate, untrue or incomplete any statement made will immediately be reported in writing to the Insurer and the insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance. It is agreed that this Application shall be material to the contract should a policy be issued and it will be attached to and become a part of the policy.

Signature of Applicant:

_____

Signature of a person authorized to execute on behalf of the Applicant.

Date *Aug 9 2016*