# EXHIBIT F



July 18, 2017

Mr. Russell Verney
Project Veritas
1214 West Boston Post Road NO 148
Mamaroneck, NY 10543

*Return Receipt Requested*

|  |  |  |
|---|---|---|
| Re: | Insureds: | Project Veritas, Project Veritas Action Fund, James O'Keefe, Allison Maass and Daniel Sandini |
|  | Claim No.: | 118014 |
|  | Policy No.: | VNPL002153 |
|  | Claimants: | Democracy Partners, LLC, Strategic Consulting Group, NA, Inc. and Robert Creamer |

Dear Mr. Verney:

Vela Insurance Services ("Vela") is the authorized claims administrator for Gemini Insurance Company ("Gemini"), which issued the above-referenced policy. The purpose of this letter is to provide you with our determination regarding coverage for the above-referenced claims.

For the reasons more fully set forth below, Gemini denies any obligation under its Professional Services Policy no. VNPL002153 (the "Policy) to defend or indemnify Project Veritas ("PV"), Project Veritas Action Fund ("PVAF"), James O'Keefe, Allison Maass and/or Daniel Sandini for the claims alleged in the complaint by Democracy Partners, LLC, Strategic Consulting Group, NA, Inc. ("SCG") and Robert Creamer, captioned in the United States District Court for the District of Columbia (the "Complaint"). We have reviewed the allegations of the Complaint and have concluded that there is no coverage for the claims set forth therein. In addition, it appears that material misrepresentations were made in the application and/or renewal applications for the Policy.

### FACTS OF CLAIMS ALLEGED

The Complaint alleges that PVAF is a section 501(c)(4) corporation and an arm of Project Veritas, a right-wing nonprofit organization that has become notorious for attempted undercover "sting" operations aimed at progressive organizations and Democratic Party campaigns and committees. Both organizations are headed and run by Defendant O'Keefe. Complaint ¶ 12.

> The modus operandi of PVAF and Project Veritas is to gain access to the offices of these organizations and campaigns through fraudulent misrepresentation; then to secretly videotape conversations and interactions with personnel of the organizations and campaigns; then to selectively edit the videotapes so as to distort and misrepresent what was said; and then to publicly release those selectively edited portions of the videotapes.

Complaint ¶ 13.

Maass is alleged to be an employee and agent of PV and PVAF. Complaint ¶ 17. On or about June 24, 2016, Creamer was introduced to and met with a man who identified himself as "Charles Roth", a potential donor to Americans United for Change, a client of Creamer. The individual's real name is Daniel Sandini, alleged to be an employee of and/or contractor to PVAF. Complaint ¶¶ 22-23. Roth/Sandini told Creamer that he had a niece, "Angela Brandt", who wanted to volunteer to do political work for Democratic candidates or organizations. Complaint ¶ 24. Creamer interviewed "Brandt" for an internship with Creamer and SCG in the Democracy Partners office. Complaint ¶ 26. Creamer is the sole owner and principal of SCG, which is a member of Democracy Partners, a company including consultants and vendors to progressive organizations and Democratic campaigns and committees. Complaint ¶¶ 18-19. Plaintiffs later learned:

> that "Angela Brandt" was a false and fictitious name; that the real name of this individual is Allison Maass; that the background information provided by Maass to Creamer was false; that Maass was not the niece of Roth/Sandini; that Maass had deliberately and repeatedly lied to Creamer about her identity and background; and that she falsely told Creamer that her interest in an internship was to gain work experience when, in fact, her actual interest and intent was to gain the trust

and confidence of Plaintiffs and to record undercover videos of Creamer and Democracy Partners for her employers, PVAF and PV.

Complaint ¶ 27.

As an intern at Democracy Partners' Washington, D.C. office, Maass, unbeknownst to any of the plaintiffs during the period of her internship, concealed and carried a camera and audio recording devices. Complaint ¶ 30. She was given confidential information not to be shared with anyone other than persons with whom she specifically had been instructed to share that information. Complaint ¶ 32. Maass recorded confidential internal conversations with Creamer and other Democracy Partners members, as well as confidential conversations they had with SCG and Democracy Partner clients in person and via conference call. Complaint ¶ 33. Maass provided these audio and video recordings to PV and PVAF, and they were used in a series of videos disseminated to the public by PVAF. Complaint ¶ 35. Maass also provided a number of confidential documents and emails to PV and PVAF, and PVAF then published them on its website under the heading "VeritasLeaks" on or around October 26, 2016. Complaint ¶ 40.

Creamer invited Maass to a meeting at the White House on or about September 9, 2016. For entry to the White House, Maass provided, in addition to the false name of "Angela Brandt", a false Social Security number, which Creamer submitted to the White House; on the day of the White House meeting, Maass claimed to feel ill and did not attend the meeting. Complaint ¶ 41.

On October 14, 2016 Creamer met Mike Carlson, who Roth/Sandini claimed was his financial advisor, for lunch at Tosca Restaurant in Washington, D.C. This lunch was surreptitiously videotaped, and leaving the restaurant Creamer was accosted by a film crew from Circa Media, a subsidiary of Sinclair Broadcasting. Complaint ¶ 45. Reporter Raffi Williams later asked Creamer to respond to video clips and indicated that O'Keefe had provided his network with hundreds of hours of raw tapes; Sinclair agreed to syndicate four nightly news pieces on these videos beginning the next week — just weeks before the 2016 presidential election. Complaint ¶ 47. Creamer and his attorney viewed approximately three hours of footage, much of which was taken by Maass and all of which was taken without the knowledge and consent of all parties to the conversations. Complaint ¶¶ 48-49. Sinclair Media never ran stories on the videos. Complaint ¶ 52.

On October 17, 2016 PVAF released footage from the hidden camera videos, heavily edited and with commentary by O'Keefe, drawing false conclusions that Plaintiffs were involved in a conspiracy to incite violence at rallies for Donald Trump, and falsely implying that Plaintiffs' work in planning and implementing bracketing events was part of that conspiracy. "The purpose of this video, and all of the videos, was falsely to portray the Democratic Party and progressive organizations as being engaged in and illegal activity." Complaint ¶ 54. A second video released the next day suggested falsely that Creamer and Democracy Partners were involved in a scheme to enable masses of non-citizens to vote illegally and otherwise to commit voter fraud. Complaint ¶ 55. Two additional videos falsely implied that Hillary Clinton was personally involved in unethical and/or illegal activity; that activities in connection with the bracketing events had been

unlawfully coordinated with the Clinton campaign; and that a group for which Creamer worked had unlawfully accepted a foreign contribution. Complaint ¶ 57.

Plaintiffs allege that as a direct result of Maass' disclosures of confidential information, a major labor organization cancelled a contract with SCG for $36,000 per year; a labor organization withdrew funding from Americans United For Change, which ceased operating and terminated its $11,000 per month contract with SCG; Democracy Partners was told by a prospective client that it was dropping plans for a contract with Democracy Partners which would have paid a minimum of $30,000. Complaint ¶¶ 64-66. Plaintiffs claim that but for the disclosures and actions of Maass, SCG and Democracy Partners would have been paid at least $534,000 for services, that the reputations of Creamer, SCG and Democracy Partners have been severely injured, and that Plaintiffs lost future contracts with a value of at least $500,000. Complaint ¶¶ 67-68.

Count One alleges breach of fiduciary duty against Maass. Count Two pleads unlawful interception of oral communications against all defendants, and asserts:

> In violation of 18 U.S.C. §§ 2511(1)(a) and 2511(1)(b), Defendant Maass willfully intercepted the oral communications of Plaintiffs and their employees by using an electronic device concealed on her person to make video and audio recordings of conversations and meetings involving Plaintiffs and their employees and clients pertaining to Plaintiffs' confidential affairs and activities.

Complaint ¶ 79. Count Two further states:

> 81. Defendants procured Defendant Maass to intercept the oral communications. Defendants O'Keefe, PVF and PVAF are responsible for Maass' actions as described in paragraphs 74 and 75 because those actions were undertaken within the scope of Maass' employment by PV and PVAF and at the direction of and supervision of O'Keefe, PV and PVAF.
>
> 82. Defendants intercepted oral communications for the primary purpose of committing trespass, breach of fiduciary duty, fraudulent misrepresentation and other criminal or tortious acts in violation of the Constitution and the laws of the United States and the District of Columbia.
>
> 83. Defendants intentionally used and publicly disclosed the contents of the recordings taken by Maass and knew that the recordings were made through the interception of oral communications, in violation of 18 U.S.C. §§ 2511(1)(c) and 2511(1)(d).

Complaint ¶¶ 81-83. Count Three similarly asserts unlawful interception of oral communications in violation of D.C. Code § 23-542(a)(1).

Count Four alleges trespass against Maass, and specifically that the defendants combined and conspired intentionally to intrude upon the property of Democracy Partners, and that Maass gained access to the Democracy Partners office only through pretense, subterfuge, misrepresentation and/or concealment. Count Five claims fraudulent misrepresentation against all defendants, and specifically that Maass made false representations regarding her name, intent in securing and maintaining the internship, purpose in seeking the internship, education and work history. Complaint ¶ 103. At all times Maass knew the representations she made to Plaintiffs were false, and she made the representations with the intent to deceive Plaintiffs. Complaint ¶¶ 106-07. The defendants are alleged to have conspired and induced Maass to make the fraudulent misrepresentations. Complaint ¶¶ 109-10. Count Six alleges civil conspiracy against all defendants.

Plaintiffs request relief including entry of judgment on each of the causes of action asserted; injunction from posting, publishing, disclosing, or in any way using any documents, recordings, or other information obtained from Plaintiffs; an order for return of any documents, recordings, or other information obtained from Plaintiffs; damages including actual damages of $1,034,000 for loss of amounts that would have been received under contracts, diminished economic value of the space leased by SCG and of confidential and proprietary information, loss of future contracts, and damage to Plaintiffs' reputation; disgorgement of all profits from unlawful conduct and use of Plaintiffs' property; statutory damages of $10,000 or $100 a day for each day of violation, whichever is greater, pursuant to 18 U.S.C. § 2520(c)(2)(B), for each violation of 8 U.S.C. § 2511 et seq.; statutory damages at the rate of $100 a day for each day of violation, or $1,000, whichever is greater, pursuant to D.C. Code § 23-554(a)(2)(A), for each violation of D.C. Code § 23-542 et seq.; punitive damages pursuant to 18 U.S.C. § 2520(b)(2) and D.C. Code § 23-554(a)(2)(B); costs and expenses including attorney's fees, pursuant to 18 U.S.C. § 2520(b)(3) and D.C. Code § 23-554(a)(2)(C); interest; costs; and additional relief as the Court may determine.

## THE POLICY

Gemini Insurance Company issued policy VNPL002153 to the named insured, Project Veritas, for the period from September 29, 2016, to September 29, 2017. Limits are $1,000,000.00 for each claim and $1,000,000.00 aggregate. There is a $25,000.00 deductible per claim, and a retroactive date of September 29, 2014.

Professional Liability Insurance policy form VP 00 06 12 15 provides:

I.    **INSURING AGREEMENT**

The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** that the **Insured** shall become legally obligated to pay because of **Claims** for **Wrongful Acts**, provided that:

  B.  The **Claim** arises out of **Wrongful Acts** committed by an **Insured** which first commenced on or after the **Retroactive Date.**

**IV. EXCLUSIONS**

This Policy does not apply to any **Claim** and the **Company** will not pay any **Loss** or **Claim Expense** for any **Claim** alleging, arising out of, based upon, or attributable to any actual or alleged:

  B.  **Profit or Advantage**

Gaining by any **Insured** of any profit or advantage to which the **Insured** was not legally entitled.

**VIII. DEFINITIONS**

  G.  **Insured(s) means:**

    1. The **Named Insured** as listed on the Declarations Page;
    …
    3. Any partner, director or officer of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** while the partner, director or officer is acting in their respective capacity as such;
    4. Any employee of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary** ….

  H.  **Loss means:**

    1. Compensatory damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy; and
    2. Punitive, exemplary or multiple damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy, but only if such punitive, exemplary or multiple damages are insurable under the law of the jurisdiction that is applicable to the **Claim**;
    However, **Loss** does not include:

(a) the cost of complying with an award for equitable, injunctive or other non-monetary relief;
(b) sanctions, fines or penalties;
(c) any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim** ….