# EXHIBIT G



July 20, 2017

Mr. Russell Verney
Project Veritas
1214 West Boston Post Road NO 148
Mamaroneck, NY 10543

*Return Receipt Requested*

|  |  |
|---|---|
| **Insureds:** | Project Veritas, James O'Keefe, III, and Allison Maass |
| **Claim No.:** | 118162 |
| **Policy No.:** | VNPL002153 |
| **Claimant:** | Steve Wentz |

Dear Mr. Verney:

Vela Insurance Services ("Vela") is the authorized claims administrator for Gemini Insurance Company ("Gemini"), which issued the above-referenced policy. The purpose of this letter is to provide you with our determination regarding coverage for the above-referenced claim.

For the reasons more fully set forth below, Gemini denies any obligation under its Professional Services Policy no. VNPL002153 (the "Policy") to defend or indemnify Project Veritas, James O'Keefe, III and/or Allison Maass for the claims alleged in the complaint filed by Steve Wentz in the United States District Court for the Middle District of Florida (the "Complaint"). We have reviewed the allegations of the Complaint and have concluded that there is no coverage for the claims set forth therein. In addition, it appears that material misrepresentations were made in the application and/or renewal applications for the Policy.

### FACTS OF CLAIMS ALLEGED

The Complaint alleges that Project Veritas is a right-wing organization that creates and distributes heavily edited propaganda videos with agendas to embarrass or ensnare liberal groups and force people to resign. Project Veritas is run and operated by its President, Mr. O'Keefe. Complaint ¶¶ 10 – 11.

Although Mr. O'Keefe and Project Veritas refer to their operatives as journalists and investigative reporters, they do not adhere to the Society of Professional Journalists Code of Ethics or the basic tenets of journalism. Rather, they use subversive tactics, fake names and secret hidden cameras, and under false pretenses induce people to make specific statements that could be taken out of context. Complaint ¶¶ 13 – 14. Their undercover, sting and deceptive editing tactics do not merely leave a false impression, but rather manufacture an elaborate, alluring lie. Complaint ¶¶ 16 – 17.

Ms. Maass was an operative of Project Veritas and Mr. O'Keefe. Complaint ¶ 18.

Mr. Wentz, a teacher and President of United Teachers of Wichita, was attending the National Council of Urban Education Associations Conference in Orlando, Florida, when Ms. Maass misrepresented herself as a teacher and secretly video-recorded her conversation with him. Mr. Wentz told Ms. Maass about an incident in which he had feigned force or used "tough love" to connect with and eventually help a troubled student. Ms. Maass gave the recording to Project Veritas and Mr. O'Keefe for editing and eventual publication. Complaint ¶¶ 19 – 40.

Months later, back in Kansas, Mr. Wentz was contacted by Dan Sandini, who told Mr. Wentz that he was an uncle of one of Mr. Wentz's students, but actually he was a Project Veritas operative. Mr. Sandini video-recorded his meeting with Mr. Wentz secretly and without Mr. Wentz's consent. Mr. Sandini gave that recording to Project Veritas and O'Keefe for eventual editing and publication. Complaint ¶¶ 41 – 49.

Project Veritas and Mr. O'Keefe took the footage from Ms. Maass and Mr. Sandini and selected clips to juxtapose with Mr. O'Keefe's prepared narration in a nine-minute, 42 second video about Mr. Wentz, who was targeted because he was President of United Teachers of Wichita; Mr. O'Keefe and Project Veritas were on a mission to discredit teachers unions during the election cycle. The video attacked Mr. Wentz's integrity as an educator, made him appear

violent, dishonest and corrupt, and also created an illusion that he played hooky from his job. Project Veritas published the video to its YouTube channel on or about June 28, 2016. Project Veritas and Mr. O'Keefe published additional written content about Mr. Wentz on Project Veritas' website and Facebook page, and also on Mr. O'Keefe's Facebook page and personal Facebook timeline. The content accused Mr. Wentz of abusing his students, abusing children and bragging about abusing kids, among other things. Complaint ¶¶ 48 – 59.

Defendant, Breitbart News Network, LLC published an article about the video on or about June 28, 2016. On June 29, 2016, Mr. O'Keefe and Project Veritas published a "quick overview" about news coverage on their video and added that they had "launched the story with our friends at Breitbart." Complaint ¶¶ 60 – 61.

Mr. Wentz brings Count I of the Complaint under 18 U.S.C. § 2520 against Project Veritas, Mr. O'Keefe and Ms. Maass "for the intentional interception, disclosure, and/or use of his oral communication, and the procuring of that intercepted communication, in violation of 18 U.S.C. § 2511." Complaint ¶ 67. Count I relates to the June 2015 incident in Orlando, and Count II, against Project Veritas and Mr. O'Keefe, states Plaintiff's claim for violation of 18 U.S.C. § 2520 in respect of the October 2015 incident in Kansas. In both Counts I and II Plaintiff alleges that the defendants "acted intentionally and maliciously, wantonly, willfully, and in bad faith, with gross and reckless disregard for Wentz's rights and interests, without Wentz's consent or approval, and without any good-faith reliance on a court order or legislative authorization for their acts." Complaint ¶¶ 73, 84. For Counts I and II, Plaintiff requests the following relief:

a.  Equitable relief requiring immediate destruction of the recording and enjoining further dissemination of it;

b.  The greater of:

   i. Wentz's actual and compensatory damages suffered plus any profits made by Defendants as a result of the violation, or

   ii. Statutory damages of the greater of $100 a day or $10,000; and

c.  Punitive damages in an amount to be determined by the jury; and

d.  A reasonable attorney's fee and other litigation costs reasonably incurred, pursuant to 18 U.S.C. § 2520(b)(3).

In Count III, Mr. Wentz brings his claim for interception of oral communications under Fla. Stat. § 934.10 against Project Veritas, Mr. O'Keefe and Ms. Maass. He requests actual damages, prejudgment interest, costs and other relief, and also reserves the right to amend the complaint to seek punitive damages.

Count IV contains Mr. Wentz's claim for the interception of his oral communications under § 22-2518, Kansas Statutes, and requests judgment against Project Veritas and Mr. O'Keefe for actual damages, but not less than liquidated damages at $100 per day for each day of violation, or $1,000, whichever is greater; reasonable attorneys' fees and other litigation costs; pre-judgment interest; and other relief. Plaintiff also reserves the right to amend the complaint and seek punitive damages on this count.

Count V contains a claim against Project Veritas and O'Keefe for common-law defamation or defamation by implication. This count sets forth the details of the allegedly false and defamatory video. Plaintiff claims:

> 143. Although Project Veritas and O'Keefe knew or should have known that their video was defamatory, they proceeded to publish the video with actual malice, or with actual knowledge that it was false or reckless disregard of whether it was false, and with such gross and reckless negligence as to amount thereto, and with a conscious disregard to Wentz's rights and the truth.
>
> 144. Project Veritas and O'Keefe published the defamatory video with a motive to injure Wentz's reputation and character and make him appear corrupt. The motive was part of a right-wing plot to make teacher's unions, in general, appear disreputable and corrupt, and damage the public's perception of teacher's unions. The incorporated allegations were made with the intent to expose Wentz to hatred, ridicule, or contempt; charged Wentz with committing a violent crime of assault; make Wentz appear dishonest and call him a liar; implied that Wentz is a physically violent and dangerous man who threatens violence against his students; and tended to injure Wentz in his business, reputation, and occupation.

Complaint ¶ 143 – 144. Count VI alleges defamation against Project Veritas and Mr. O'Keefe for the written content on the Project Veritas website, in addition to the YouTube publication, as well as the Facebook postings on June 28, 2016. This Count contains the same allegations regarding Project Veritas and Mr. O'Keefe's intentions and motives as does Count V. *See* Complaint ¶ 160 – 162. In both Counts V and VI, the plaintiff claims actual damages, prejudgment interest, costs and other relief, and also reserves the right to amend the complaint to seek punitive damages.

Count VII asserts common-law defamation or defamation by implication against defendant Breitbart.

Count VIII seeks a temporary and permanent injunction against Project Veritas, Mr. O'Keefe and Breitbart, "requiring defendants to destroy and delete any and all videos taken of Wentz, and statements taken from those videos, and any and all defamatory written content about Wentz, and cause the immediate removal from the Internet of, and prohibiting continued

display of, the offensive defamatory content, and to award Wentz his costs, and any other relief as is just and proper."

**THE POLICY**

Gemini Insurance Company issued policy VNPL002153 to the named insured, Project Veritas, for the period from September 29, 2016, to September 29, 2017. Limits are $1,000,000.00 for each claim and $1,000,000.00 aggregate. There is a $25,000.00 deductible per claim, and a retroactive date of September 29, 2014.

Professional Liability Insurance policy form VP 00 06 12 15 provides:

I.  **INSURING AGREEMENT**

The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** that the **Insured** shall become legally obligated to pay because of **Claims** for **Wrongful Acts**, provided that:

B.  The **Claim** arises out of **Wrongful Acts** committed by an **Insured** which first commenced on or after the **Retroactive Date.**

IV. **EXCLUSIONS**

This Policy does not apply to any **Claim** and the **Company** will not pay any **Loss** or **Claim Expense** for any **Claim** alleging, arising out of, based upon, or attributable to any actual or alleged:

B.  **Profit or Advantage**
Gaining by any **Insured** of any profit or advantage to which the **Insured** was not legally entitled.

VIII. **DEFINITIONS**

G.  Insured(s) means:

1.  The **Named Insured** as listed on the Declarations Page;
...
3.  Any partner, director or officer of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** while the partner, director or officer is acting in their respective capacity as such;

    4. Any employee of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary** ....

H. **Loss** means:

    1. Compensatory damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy; and

    2. Punitive, exemplary or multiple damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy, but only if such punitive, exemplary or multiple damages are insurable under the law of the jurisdiction that is applicable to the **Claim**;

However, **Loss** does not include:

(a) the cost of complying with an award for equitable, injunctive or other non-monetary relief;
(b) sanctions, fines or penalties;
(c) any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim** ....

I. **Named Insured** means the **Named Insured** listed on the Declarations Page.

J. **Personal and Advertising Injury** means publication or utterance of oral or written material in connection with the **Insured's** performance or advertising of **Professional Services** that violates a person's right of privacy or publicity or which libels or slanders a person or organization.

L. **Professional Services** means only those **Professional Services** listed on the Declarations Page rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation.

P. **Wrongful Act** means any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury**, committed solely in the rendering of or failure to render **Professional Services** by an **Insured**.

IX. **GENERAL CONDITIONS**

    E. **REPRESENTATION**

In issuing this Policy, the **Company** has relied upon the statements, representations and information in the **Application**. The **Named Insured** acknowledges and agrees that all such statements, representations and information provided in the **Application** are true and accurate, are made or provided in order to induce the **Company** to issue this