Policy, and are material to the **Company's** acceptance of the risk to which this Policy applies.

In the event that any of the statements, representation or information in the **Application** are not true and accurate, this Policy shall be void with respect to the **Named Insured** and any other **Insured** who, as of the date the **Application** was signed, knew about the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application)** or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

**1.**     the knowledge of any **Insured** who is a present or former chief financial officer, in-house general counsel, partner, chief executive officer, president or chairperson of the **Named Insured** shall be imputed to the **Named Insured;**

**2.**     the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the Insureds; and

**3.**     except as provided in (1.) above, the knowledge of an **Insured** who did not sign the **Application** shall not be imputed by any other **Insured.**

The Media Extension Endorsement, AD 66 16 04 09 modifies the Professional Liability Coverage Part as follows, in relevant part:

Section **III. DEFINITIONS**, N) "**Wrongful Act**" is amended to add:

4. Media Injury.

Section **III. DEFINITIONS,** is amended to include the following:

"**Media Injury**" means infringement of copyright, trademark, service mark, trade name, trade dress, title or slogan committed in **Content** created or disseminated by the Insured and in the performance of **Professional Services**.

"**Content**" means mappings, drawings, advertisement, publicity, press release or article, publication, marketing or promotional item, broadcast, telecast or webcast.

The Professional Services endorsement, VP 02 75 12 15, delineates "Professional Services" as: "Solely in the performance of providing investigative reporting services."

The Policy Amendment Criminal/Dishonest/Knowingly Wrongful Acts (Exclusion A.) endorsement states:

I.       Section **IV. EXCLUSIONS,** paragraph **A.,** is deleted in its entirety and replaced with the following:

**A.** Criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**.

...

Notwithstanding this exclusion, the **Company** will defend any **Claim** alleging, arising out of, based upon, or attributable to any alleged criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**, which is otherwise covered by this Policy, until there is an admission, judgment, by or adjudication, by or against any **Insured,** that such conduct occurred. The **Company** also agrees that such insurance as would otherwise be afforded under this Policy shall be applicable to any **Insured** who is a natural person, other than the **Named Insured**, who did not did not participate in, ratify or acquiesce in such conduct after having knowledge of such conduct.

Amended Named Insured Endorsement VP 02 79 02 16 amends the definition of "Named Insured" to include Project Veritas Action Fund.

The Independent Contractor Endorsement, form VP 02 91 04 16, amends the definition of "Insured" to include:

**9.** Independent contractors of the Named **Insured** while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**.

## DISCLAIMER OF COVERAGE

The Gemini Insurance Company Professional Liability Insurance Policy does not provide coverage for the claims set forth in the Complaint of Steve Wentz and Gemini has no duty to pay any loss or claim expenses on behalf of any of the defendants in the lawsuit.

The policy definition of "wrongful act" is limited to "any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury,** committed solely in the rendering of or failure to render **Professional Services** by an **Insured.**" Policy endorsement 7 identifies the insureds' professional services as "solely in the performance of providing investigative reporting services." The Policy definition limits "professional services" to those "rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation."

The alleged actions to obtain and publish video and audio recordings, whether or not they may be considered "investigative reporting services", do not involve the rendering or failure to

render such services to the plaintiff or anyone else for a fee.  Under the plain and ordinary meaning of the Policy description of "professional services", without such compensation the conduct alleged in the Complaint does not qualify as a covered "wrongful act", which must have been "committed solely in the rendering of or failure to render **Professional Services** by an **Insured.**"

The allegations of the Complaint pertain to secretly recorded videos of the plaintiff and the allegedly defamatory public release of edited videotapes, and other defamatory publications. The material involved in the lawsuit was released on Project Veritas's YouTube channel, website and Facebook page, as well as Mr. O'Keefe's Facebook page, and was not obtained for or provided to others for a fee or other compensation.  The alleged conduct may relate to investigations for production of Project Veritas' own services, but no services which were provided to others for remuneration or any other form of compensation. The Policy definition of "professional services" does not cover all wrongful acts relating to the insureds' operations. That Project Veritas obtains donations for undercover investigation work and publication does not transform every incident of misconduct by Project Veritas and its employees or contractors into a wrongful act committed in the course of performing professional services as defined in the Gemini Policy. The insuring clause extends only to those claims arising from Project Veritas' provision of investigative reporting services "for others for a fee or other form of compensation." It does not include the alleged unauthorized video recording of the plaintiff and the defamatory publication of materials which did not involve services to others for a fee or other compensation.

As indicated above, the Media Extension Endorsement provides that the definition of "wrongful act" is amended to add "media injury", defined as 'infringement of copyright, trademark, service mark, trade name, trade dress, title or slogan committed in **Content** created or disseminated by the Insured and in the performance of **Professional Services**." However, no such claims are included in the Complaint, and thus the Complaint does not invoke potential coverage for "media injury", which still must have happened in the performance of "professional services".

With respect to all claims alleged, the Complaint does not involve a "wrongful act" committed solely in the rendering of or failure to render "professional services" by an insured (Definitions L and P), for the reasons set forth above.

Gemini also has no duty to indemnify the insureds based on the exclusion of "any **Claim** alleging, arising out of, based upon, or attributable to any alleged criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured** ...."  Moreover, any duty Gemini otherwise may have to defend the insureds will terminate upon "an admission, judgment, or adjudication, by or against any **Insured,** that such conduct occurred." (Amendment Criminal/Dishonest/Knowingly Wrongful Acts (Exclusion A.)),

With respect to plaintiffs' alternative claim in Counts I and II for profits made as a result of defendants' violation of 18 U.S.C. §2520, there is no coverage pursuant to Exclusion B: "profit

or advantage to which the **Insured** was not legally entitled." Restitution of ill-gotten funds does not constitute "damages" or a covered "loss" under the Policy.

Gemini also disclaims coverage for punitive damages insofar as they are not "insurable under the law of the jurisdiction applicable to the **Claim**". (Definition H.)

Definition H further states:

Covered "Loss" does not include:
**(a)** the cost of complying with an award for equitable, injunctive or other non-monetary relief;
**(b)** sanctions, fines or penalties;
**(c)** any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim** …

Accordingly, costs of complying with the injunctive and other equitable relief requested by the plaintiffs in Counts I, II and VIII are not a covered "loss" under the terms of the Policy. Gemini disclaims coverage for these specific items of relief, and also for any requests or awards for sanctions, fines or penalties against the insureds.

Furthermore, our investigation of the instant claims indicates that Project Veritas made material misrepresentations in applying for and in renewing the Policy with an intent to defraud the insurer and obtain insurance which, if the insurer had knowledge of the misrepresented facts, would not have been issued and/or renewed. Project Veritas induced Gemini to issue and/or renew the Policy by misrepresenting that its business included or prospectively included earning fees or other compensation for investigative reporting services rendered to others, and that Project Veritas obtained consent from persons appearing in its video recordings.

Mr. O'Keefe signed the application for insurance on August 14, 2014. The application is entitled "Multimedia Liability Coverage". In Section 15, "Film & Program Production", Project Veritas identified in Item C the form of production as "video", and in Item D the source of production as "undercover recordings released on YouTube". In Item G, the insured stated affirmatively that all licenses and consents have been obtained (1) from copyright owners; (2) from music owners; (3) from performers or persons appearing in the film; and (4) from writers and/or others.

In the 2015 Specified Professional Liability Renewal Application, signed by Russell Verney and dated August 4, 2015, Project Veritas listed as its largest jobs or projects the Veteran's Administration, Export Import Bank, Barry University, Cornell University and Al Sharpton under "clients", for which "expose" services were performed. Amounts for gross billings/fees are stated for each.

In the renewal application signed and dated by Mr. Verney on August 9, 2016, it is stated that there have been no changes in the nature of the applicant's business in the last twelve

months.  In the description of the five largest jobs or projects in the past year, instead of the "client", "services provided", and "gross billing/fees" previously indicated, it is stated: "Project Veritas accepts unrestricted contributions to our general revenue fund.  Project Veritas determines which investigations to undertake, when to conduct the investigations and how to conduct the investigations.  Project Veritas has no obligations to 'clients.'"

Gemini would not have issued insurance extending to the insureds' activities in obtaining and disseminating recordings without consent, as opposed to other types of professional investigative reporting services for a fee or other compensation, which the professional services coverage plainly requires. If Project Veritas insured had disclosed that it was not earning fees or other compensation of any of its activities, and had no intention to do so, the Professional Services Policy would not have been issued or continued.

For the reasons stated above, Gemini has no obligation to defend or indemnify Project Veritas, James O'Keefe, III and/or Allison Maass for the claims alleged in the Complaint.  If you have other insurance that may apply to this matter, we recommend that you immediately place the appropriate carrier(s) on notice.

## CONCLUSION

The disclaimer of coverage set forth herein is based on facts and circumstances known at this time.  Gemini notes that further analysis and investigation may reveal other provisions of the Gemini Policy that might apply and, thus, Gemini fully reserves the right to raise other facts, terms, conditions and/or exclusions that may become applicable to the claims presented as they become known to Gemini.  Gemini further reserves all rights and defenses that may be available in law and equity including, as stated above, the right to rescind the Gemini Policy because of Project Veritas's material misrepresentations in the insurance and/or renewal applications.

If you believe Gemini's coverage position is incorrect or incomplete, either factually or legally, please provide us with information that supports that belief.  Upon receipt of such information, Vela, on behalf of Gemini, will review its coverage position and revise that position if warranted.  However, any action taken by Vela on behalf of Gemini shall not constitute an admission of liability or an admission of coverage and should not be deemed a waiver of any right to disclaim liability or coverage.

Should you have any questions or if you wish to discuss Gemini's coverage position, please do not hesitate to contact me.

Sincerely,

Cathy Daly, RPLU
Senior Professional Liability Claims Examiner
312-725-7657
cdaly@vela-ins.com

cc:

       NIF Group
       30 Park Avenue
       Manhasset, NY 11030-2444