# EXHIBIT H



August 7, 2017

Mr. Russell Verney
Project Veritas
1214 West Boston Post Road NO 148
Mamaroneck, NY 10543

*Return Receipt Requested*

| Re: | Insureds: | Project Veritas, Project Veritas, LLC, Project Veritas Action Fund, James O'Keefe, III, Allison Maass and Christian Hartsock |
| --- | --- | --- |
| | Claim No.: | 116890 |
| | Policy No.: | VNPL002153 |
| | Claimant: | Kim Koerber |

Dear Mr. Verney:

Vela Insurance Services ("Vela") is the authorized claims administrator for Gemini Insurance Company ("Gemini"), which issued the above-referenced policy. Gemini has been providing the defense of Project Veritas, Project Veritas, LLC, and Project Veritas Action Fund (collectively, the "PV Defendants"), and also James O'Keefe, III, Allison Maass and Christian Hartsock, in the lawsuit filed by Kim Koerber in the Superior Court of California, County of Los Angeles, Case No. BC 649878, pursuant to a reservation of all of its rights and remedies under Gemini Professional Services Policy No. VNPL002152 (the "Policy"), and other applicable statutes

and common law, as set forth in our letter dated March 2, 2017. That letter is incorporated herein, and for the reasons set forth below, Gemini disclaims any obligation to provide a defense or indemnity for any and all claims in the lawsuit filed by Kim Koerber, and will withdraw its defense effective thirty (30) days from the date of this letter.

Upon further investigation of this matter and other lawsuits pending against some of all of the PV Defendants and their alleged officers, representatives, employees and/or contractors, including but not limited to Mr. O'Keefe and Ms. Maass, we have concluded that there is no coverage for the claims set forth in the complaint filed by Ms. Koerber in the lawsuit (the "Complaint"). In addition, it appears that material misrepresentations were made in the application and/or renewal application for the Policy.

**FACTS OF CLAIMS ALLEGED**

The Complaint alleges in the "Statement of the Case" and in paragraph 31 that Plaintiff's employment was wrongfully terminated because she expressed opinions in a private conversation while off work; the conversation was illegally recorded by a hidden camera without her knowledge by the PV Defendants, Breakthrough Dev Group (an alleged pseudonym for the PV Defendants), Mr. O'Keefe, Ms. Maass and Mr. Hartsock, in violation of the California Penal Code. Defendants were responsible for planning, scripting, producing, directing, and using false pretenses to obtain a private meeting with Plaintiff, where they illegally recorded her, and then edited, produced and disseminated an elaborate, inaccurate and illegal recording of the private meeting on social media, with the intent of causing her to be terminated from her employment and damaged. The PV Defendants used portions of the illegally recorded private conversation for their website, YouTube, and other public presentations, in a produced video format with animated caricatures of Plaintiff and highly edited and inaccurate representations of her private statements, which were published without her knowledge or consent. In paragraph 31 Plaintiff further alleges that the PV Defendants do this to promote themselves and O'Keefe, for their self-aggrandizement, to increase their self-professed "celebrity" status and for their own financial gain. When Plaintiff's employer learned of the video's publication on social media, it immediately and wrongfully terminated Plaintiff's employment.

As stated in our letter of March 2, 2017, the first through twelfth causes of action are not against the Gemini insureds but rather involve Cengage, the plaintiff's former employer, and related persons. The thirteenth cause of action alleges intentional infliction of emotional distress by all defendants, and the fourteenth alleges violation of Business and Professions Code §17200 by all defendants. The remaining causes of action are directed against the insureds: (15) violation of the Invasion of Privacy Act (California Penal Code §632) in recording confidential information; (16) violation of the Invasion of Privacy Act (California Penal Code §647j) in using a camera to observe the plaintiff; (17) invasion of privacy in using false pretenses to obtain plaintiff's physical presence and record her; (18) common law invasion of privacy; (19) public exposure of private facts; (20) public exposure of private facts-false light; (21) violation of privacy - use of name or likeness in publishing the plaintiff's likeness without consent;

(22) negligence per se in violating the California Penal Code; and (23) intentional interference with prospective economic relations.

We also note that in paragraph 5, Plaintiff alleges that the PV Defendants, Mr. O'Keefe, Ms. Maass and Mr. Hartsock, using their various pseudonyms, "collectively concealed their identities, came into the State of California and illegally recorded a private conversation with Plaintiff, which they then disseminated throughout California, in an effort to obtain financial benefit from the State of California." Plaintiff further alleges in paragraph 10 that each of these defendants' actions and conduct were known to and were authorized and ratified by the other defendants, and further that the defendants "knowingly and willfully conspired and agreed among themselves to do the acts herein alleged."

Plaintiff alleges that after November 10, 2015, when she was contacted under the pretext of an invitation to assist with research of an issue by Kamala Harris, then the Attorney General of California, Project Veritas illegally recorded her and published misleading and incomplete content taken out of context. She was fired from her employment after the video was published. Plaintiff further asserts that in addition to their illegal conduct, the PV Defendants and Mr. O'Keefe publicly stated that they know what they are doing is criminal, and they intended to get Plaintiff fired and to damage her. As stated in paragraph 23:

> Defendant O'KEEFE, on behalf of Defendant PV, publically stated that it was his intent to get Plaintiff fired and to damage her. Defendant O'KEEFE, on behalf of Defendant PV, admits his "crimes" and that his "undercover work" uses illegal "hidden video cameras" referring to his illegal recording activities as a "dark art" in which "his people" pose as representatives of politicians and lure individuals to be illegally recorded by falsely stating that their "consulting firm advises legislators." He specifically admitted in an interview about his activities in California "investigating Common Core" that Plaintiff did not know she was "being taped since we were posing as lobbyists." His stated goal is "to teach you a lesson and make you an unwilling internet sensation." He falsely publically labeled Plaintiff a "corrupt" "common core executive", an "anti-American" who "doesn't seem to think too highly of Christianity" and that she "boasts about the easy money publishers make". Plaintiff is informed and believes that although he claims to undertake these illegal activities for the sake of some unstated public good as a "journalist" he mainly used the videos of Plaintiff to promote himself for his own financial gain.

It is further alleged in paragraph 27: "the PV Defendants not only know that their conduct is illegal, they intentionally and purposefully continue to illegally record individuals like Plaintiff in California knowing it is illegal to do so. They publically state that it is their goal to get people fired, and that they will act illegally to do so."

In paragraph 30, Plaintiff alleges that Ms. Maass knew that the plaintiff was being illegally recorded, and is aware of the defendants' previous illegal conduct, and that her conduct was illegal under California law.  In paragraph 30, Plaintiff states that Mr. Hartsock illegally recorded her, that he has planned, directed and recorded other illegal productions as a long-time collaborator with Mr. O'Keefe, and has intentionally and knowingly violated California law.

In the thirteenth cause of action (for intentional infliction of emotional distress), at paragraph 94, Plaintiff alleges that the defendants acted

> deliberately and intentionally to cause Plaintiff suffer humiliation, mental anguish, and emotional distress.  The outrageousness of the above-mentioned conduct is amplified due to the Defendants' knowledge of the fact that they were committing a crime, and acting with the express purpose of injuring Plaintiff. Defendants were aware that mistreating Plaintiff would cause Plaintiff to suffer extreme emotional distress, and other consequential damages.

The invasion of Plaintiffs' privacy is alleged in the fifteenth through twenty-third causes of action to have been intentional and illegal.

In paragraph 142 Plaintiff asserts:

> Defendants illegally videotaped Plaintiff, then published her likeliness and name without her consent, specifically for a commercial purpose, for financial gain and the self-promotion of Defendant O'KEEFE. Defendants did so in order to obtain income from events, appearances and other commercial activities, and sales of books and or other media.  Defendants obtained commercial and financial gain from the use of Plaintiff's name and likeness, and illegally publicized information or material that showed Plaintiff in a false light, in violation of numerous laws, stated herein.

In addition to general and special compensatory damages and interest, Plaintiff claims punitive and exemplary damages; attorneys' fees; a preliminary and permanent injunction with respect to Plaintiff's position and employment records, as well as the recordings of the PV Defendants; disgorgement of profits; cost and expenses; and other relief.

### THE POLICY

Gemini Insurance Company issued policy VNPL002153 to the named insured, Project Veritas, for the period from September 29, 2016, to September 29, 2017.   Limits are $1,000,000.00 for each claim and $1,000,000.00 aggregate.  There is a $25,000.00 deductible per claim, and a retroactive date of September 29, 2014.

Professional Liability Insurance policy form VP 00 06 12 15 provides:

I.      **INSURING AGREEMENT**

The **Company** will pay on behalf of the **Insured** any **Loss** and **Claim Expenses** that the **Insured** shall become legally obligated to pay because of **Claims** for **Wrongful Acts**, provided that:

B.      The **Claim** arises out of **Wrongful Acts** committed by an **Insured** which first commenced on or after the **Retroactive Date.**

IV.     **EXCLUSIONS**

This Policy does not apply to any **Claim** and the **Company** will not pay any **Loss** or **Claim Expense** for any **Claim** alleging, arising out of, based upon, or attributable to any actual or alleged:

B.      **Profit or Advantage**
Gaining by any **Insured** of any profit or advantage to which the **Insured** was not legally entitled.

C.      **Bodily Injury/Property Damage**
Bodily Injury, sickness, disease or death of any person, including emotion distress or mental anguish, and any injury to, or destruction of, any tangible property, or **Loss** of use of any such tangible property.

VIII.   **DEFINITIONS**

G.      **Insured(s) means:**

1.      The **Named Insured** as listed on the Declarations Page;
...
3.      Any partner, director or officer of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** while the partner, director or officer is acting in their respective capacity as such;
4.      Any employee of the **Named Insured** or **Subsidiary**, but only while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary** ….

H.      **Loss means:**

1.      Compensatory damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this Policy; and
2.      Punitive, exemplary or multiple damages which the **Insured** is legally obligated to pay because of a **Wrongful Act** covered by this

Policy, but only if such punitive, exemplary or multiple damages are insurable under the law of the jurisdiction that is applicable to the **Claim**;

However, **Loss** does not include:

**(a)** the cost of complying with an award for equitable, injunctive or other non-monetary relief;

**(b)** sanctions, fines or penalties;

**(c)** any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim ….**

**I.**     **Named Insured** means the **Named Insured** listed on the Declarations Page.

**J.**     **Personal and Advertising Injury** means publication or utterance of oral or written material in connection with the **Insured's** performance or advertising of **Professional Services** that violates a person's right of privacy or publicity or which libels or slanders a person or organization.

**L.**     **Professional Services** means only those **Professional Services** listed on the Declarations Page rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation.

**P.**     **Wrongful Act** means any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury,** committed solely in the rendering of or failure to render **Professional Services** by an **Insured**.

**IX.     GENERAL CONDITIONS**

**E.     REPRESENTATION**

In issuing this Policy, the **Company** has relied upon the statements, representations and information in the **Application. The Named Insured** acknowledges and agrees that all such statements, representations and information provided in the **Application** are true and accurate, are made or provided in order to induce the **Company** to issue this Policy, and are material to the **Company's** acceptance of the risk to which this Policy applies.

In the event that any of the statements, representation or information in the **Application** are not true and accurate, this Policy shall be void with respect to the **Named Insured** and any other **Insured** who, as of the date the **Application** was signed, knew about the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application)** or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

**1.**      the knowledge of any **Insured** who is a present or former chief financial officer, in-house general counsel, partner, chief executive officer, president or chairperson of the **Named Insured** shall be imputed to the **Named Insured;**

**2.**      the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the Insureds; and

**3.**      except as provided in (1.) above, the knowledge of an **Insured** who did not sign the **Application** shall not be imputed by any other **Insured.**

The Media Extension Endorsement, AD 66 16 04 09 modifies the Professional Liability Coverage Part as follows, in relevant part:

Section **III. DEFINITIONS**, N) "**Wrongful Act**" is amended to add:

4. Media Injury.

Section **III. DEFINITIONS,** is amended to include the following:

 "**Media Injury**" means infringement of copyright, trademark, service mark, trade name, trade dress, title or slogan committed in **Content** created or disseminated by the Insured and in the performance of **Professional Services**.

 "**Content**" means mappings, drawings, advertisement, publicity, press release or article, publication, marketing or promotional item, broadcast, telecast or webcast.

The Professional Services endorsement, VP 02 75 12 15, delineates "Professional Services" as: "Solely in the performance of providing investigative reporting services."

The Policy Amendment Criminal/Dishonest/Knowingly Wrongful Acts (Exclusion A.) endorsement states:

I.      Section **IV. EXCLUSIONS,** paragraph **A.**, is deleted in its entirety and replaced with the following:

A.   Criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured**.
     ...
     Notwithstanding this exclusion, the **Company** will defend any **Claim** alleging, arising out of, based upon, or attributable to any alleged criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by

any **Insured**, which is otherwise covered by this Policy, until there is an admission, judgment, or adjudication, by or against any **Insured,** that such conduct occurred. The **Company** also agrees that such insurance as would otherwise be afforded under this Policy shall be applicable to any **Insured** who is a natural person, other than the **Named Insured**, who did not did not participate in, ratify or acquiesce in such conduct after having knowledge of such conduct.

Amended Named Insured Endorsement VP 02 79 02 16 amends the definition of "Named Insured" to include Project Veritas Action Fund.

The Independent Contractor Endorsement, form VP 02 91 04 16, amends the definition of "Insured" to include:

**9.** Independent contractors of the Named **Insured** while rendering **Professional Services** on behalf of the **Named Insured** or **Subsidiary**.

### DISCLAIMER OF COVERAGE AND WITHDRAWAL OF DEFENSE

The Gemini Insurance Company Professional Liability Insurance Policy does not provide coverage for the claims set forth in the Complaint of Kim Koerber, and Gemini has no duty to pay any loss or claim expenses on behalf of any of the defendants in the lawsuit.

The policy definition of "wrongful act" is limited to "any negligent act, error or omission or breach of professional duty, or **Personal and Advertising Injury,** committed solely in the rendering of or failure to render **Professional Services** by an **Insured.**" Policy endorsement 7 identifies the insureds' professional services as "[s]olely in the performance of providing investigative reporting services." The Policy definition limits "professional services" to those "rendered by or on behalf of the **Named Insured** for others for a fee or other form of compensation."

Based on facts which have emerged in this lawsuit and other claims against Project Veritas, Project Veritas Action Fund and/or their alleged employees and/or contractors, it has become clear that the alleged actions to obtain and publish video and audio recordings, whether or not they may be considered "investigative reporting services", do not involve the rendering or failure to render such services to the plaintiff or anyone else for a fee. Under the plain and ordinary meaning of the Policy description of "professional services", without such compensation the conduct alleged in the Complaint does not qualify as a covered "wrongful act", which must have been "committed solely in the rendering of or failure to render **Professional Services** by an **Insured.**"

The Complaint alleges criminal and other illegal activity in secretly recording videos of the plaintiff and the public release of edited videotapes, and other publications. The material involved in the lawsuit was released on Project Veritas's YouTube channel and website, and was not obtained for or provided to others for a fee or other compensation. The alleged conduct may relate to investigations for production of Project Veritas' own services, but no services which were provided to others for remuneration or any other form of compensation.

The Complaint alleges that the defendants acted to obtain financial benefit from the State of California, and that Mr. O'Keefe used the videos of the plaintiff to promote himself and for his financial gain. However, the Policy definition of "professional services" does not cover all wrongful acts relating to the insureds' operations. That Project Veritas obtains donations for its overall mission does not transform every incident of alleged misconduct by Project Veritas and its employees or contractors into a wrongful act committed in the course of performing professional services as defined in the Gemini Policy. The insuring clause extends only to those claims arising from Project Veritas' provision of investigative reporting services "for others for a fee or other form of compensation." It does not include the alleged unauthorized audio and video recording of the plaintiff and the defamatory publication of materials which did not involve services to others for a fee or other compensation. It now appears that none of the sources of income or financial gain alleged in the Complaint are fees or other compensation for investigation of the plaintiff and reporting for others.

The Media Extension Endorsement provides that the definition of "wrongful act" is amended to add "media injury", defined as 'infringement of copyright, trademark, service mark, trade name, trade dress, title or slogan committed in **Content** created or disseminated by the Insured and in the performance of **Professional Services**." However, no such claims are included in the Complaint, and thus the Complaint does not invoke potential coverage for "media injury", which still must have happened in the performance of "professional services".

With respect to all claims alleged, the Complaint does not involve a "wrongful act" committed solely in the rendering of or failure to render "professional services" by an insured (Definitions L and P), for the reasons set forth above.

Gemini also has no duty to indemnify the insureds based on the exclusion of "any **Claim** alleging, arising out of, based upon, or attributable to any alleged criminal, dishonest, fraudulent, or knowingly or intentionally **Wrongful Acts** or omissions committed by or at the direction of any **Insured** or which were ratified or acquiesced in by any **Insured** …." Moreover, any duty Gemini otherwise may have to defend the insureds will terminate upon "an admission, judgment, or adjudication, by or against any **Insured,** that such conduct occurred." (Amendment Criminal/Dishonest/Knowingly Wrongful Acts (Exclusion A.)),

As indicated in our letter of March 2, 2017, Plaintiff's claims for disgorgement of profits in causes of action 14-23 against the PV Defendants, Mr. O'Keefe, Ms. Maass and Mr. Hartsock are not covered on account of Exclusion B: "profit or advantage to which the **Insured** was not legally entitled." Restitution of ill-gotten funds does not constitute "damages" or a covered

"loss" under the Policy. In addition, the claims for emotional distress pleaded as injuries in causes of action 13 and 15-23 against the PV Defendants, Mr. O'Keefe, Ms. Maass and Mr. Hartsock, and separately as the thirteenth cause of action against all defendants, are barred from coverage: exclusion C applies to "Bodily Injury, sickness, disease or death of any person, including emotion distress or mental anguish"

Gemini also disclaims coverage for punitive damages pleaded in causes of action 13 and 15-23 against the PV Defendants, Mr. O'Keefe, Ms. Maass and Mr. Hartsock, insofar as they are not "insurable under the law of the jurisdiction applicable to the **Claim**". (Definition H.) As stated in our letter of March 2, 2017, punitive damages are not insurable under California law, including section 533 of the California Insurance Code.

Definition H further states:

Covered "Loss" does not include:
**(a)** the cost of complying with an award for equitable, injunctive or other non-monetary relief;
**(b)** sanctions, fines or penalties;
**(c)** any monetary relief that is uninsurable under the law of the jurisdiction that is applicable to the **Claim** ...

Accordingly, costs of complying with preliminary and/or permanent injunctive relief for removal and expungement of the recordings of and statements about the plaintiff, in connection with causes of action 14-23 pleaded against the PV Defendants, and other equitable relief requested by the Plaintiff, are not a covered "loss" under the terms of the Policy. Gemini disclaims coverage for these specific items of relief, and also for any requests or awards for sanctions, fines or penalties against the insureds, including but not limited to claims for attorneys' fees and the claims in the fifteenth, sixteenth and seventeenth causes of action for penalties as provided by statute, $5,000.00 per violation and treble damages.

Furthermore, our investigation indicates that Project Veritas made material misrepresentations in applying for and in renewing the Policy with an intent to defraud the insurer and obtain insurance which, if the insurer had knowledge of the misrepresented facts, would not have been issued and/or renewed. Project Veritas induced Gemini to issue and/or renew the Policy by misrepresenting that its business included or prospectively included earning fees or other compensation for investigative reporting services rendered to others, and that Project Veritas obtained consent from persons appearing in its video recordings.

Mr. O'Keefe signed the application for insurance on August 14, 2014. The application is entitled "Multimedia Liability Coverage". In Section 15, "Film & Program Production", Project Veritas identified in Item C the form of production as "video", and in Item D the source of production as "[u]ndercover recordings released on YouTube". In Item G, the insured stated affirmatively that all licenses and consents have been obtained (1) from copyright owners; (2)

from music owners; (3) from performers or persons appearing in the film; and (4) from writers and/or others.

In the 2015 Specified Professional Liability Renewal Application, signed by Russell Verney and dated August 4, 2015, Project Veritas listed as its largest jobs or projects the Veteran's Administration, Export Import Bank, Barry University, Cornell University and Al Sharpton under "clients", for which "expose" services were performed. Amounts for gross billings/fees are stated for each.

In the renewal application signed and dated by Mr. Verney on August 9, 2016, it is stated that there have been no changes in the nature of the applicant's business in the last twelve months. In the description of the five largest jobs or projects in the past year, instead of the "client", "services provided", and "gross billing/fees" previously indicated, it is stated: "Project Veritas accepts unrestricted contributions to our general revenue fund. Project Veritas determines which investigations to undertake, when to conduct the investigations and how to conduct the investigations. Project Veritas has no obligations to 'clients.'"

Gemini would not have issued insurance extending to the insureds' activities in obtaining and disseminating recordings without consent, as opposed to other types of professional investigative reporting services for a fee or other compensation, which the professional services coverage plainly requires. If Project Veritas insured had disclosed that it was not earning fees or other compensation of any of its activities, and had no intention to do so, the Professional Services Policy would not have been issued or continued.

For the reasons stated above, Gemini has no obligation to defend or indemnify Project Veritas, Project Veritas LLC, Project Veritas Action Fund, James O'Keefe, III, Allison Maass, and/or Christian Hartsock for the claims alleged in the Complaint. Gemini hereby disclaims any obligation to provide a defense or indemnification, and will withdraw its defense of the lawsuit filed by Mrs. Koerber thirty (30) days from the date of this letter. Each and all of the insureds then will be obliged to undertake their own defense. It is important that you understand this correspondence, and you may wish to discuss it with your personal attorney. If you have other insurance that may apply to this matter, we recommend that you immediately place the appropriate carrier(s) on notice.

**CONCLUSION**

The disclaimer of coverage and withdrawal of defense as set forth herein is based on facts and circumstances known at this time. Further analysis and investigation may reveal other provisions of the Gemini Policy that might apply and, thus, Gemini fully reserves the right to raise other facts, terms, conditions and/or exclusions that may become applicable to the claims presented as they become known to Gemini. Gemini further reserves all rights and defenses that may be available in law and equity including, as stated above, the right to rescind the Gemini Policy because of Project Veritas's material misrepresentations in the insurance and/or renewal applications.

If you believe Gemini's coverage position is incorrect or incomplete, either factually or legally, please provide us with information that supports that belief.  Upon receipt of such information, Vela, on behalf of Gemini, will review its coverage position and revise that position if warranted.  However, any action taken by Vela on behalf of Gemini shall not constitute an admission of liability or an admission of coverage and should not be deemed a waiver of any right to disclaim liability or coverage.

Should you have any questions or if you wish to discuss Gemini's coverage position, please do not hesitate to contact me.

Sincerely,

Cathy Daly, RPLU
Senior Professional Liability Claims Examiner
312-725-7657
cdaly@vela-ins.com

cc:

NIF Group
30 Park Avenue
Manhasset, NY 11030-2444

David Rubin
Litchfield Cavo
251 S. Lake Ave. #750
Pasadena, CA  91101